**Marcia WELCH, individually and on behalf of all others similarly situated, Plaintiffs,**

**v.**

**BOARD OF DIRECTORS OF WILD-WOOD GOLF CLUB and Board of Directors of Stone Lodge, Inc., individually, and in their official capacities, Defendants.**

Civ. A. No. 90–1154.

United States District Court, W.D. Pennsylvania.

Feb. 16, 1995.

Deborah Luteran Iwanyshyn, Bruce Bagin, Wienand & Bagin, Pittsburgh, PA, Joseph W. Henandez–Cuebas, Delmar, NY, for plaintiffs.

Richard F. Rinaldo, Laura A. Candris, Emily M. Dargatz, Lynn Fisher Hill, Eckert, Seamans, Cherin & Mellott, Pittsburgh, PA, for defendants.

## MEMORANDUM OPINION

LEE, District Judge.

Before the Court is the Motion for Summary Judgment of Defendants (Document No. 278) and Memorandum of Law in Opposition thereto.

## I. FACTUAL BACKGROUND

This is a class action for declaratory and injunctive relief and damages, brought pursuant to 42 U.S.C. §§ 1983 and 1985(3). The class is comprised of women members of Wildwood Golf Club and women spouses of Club members who had Club privileges during the period from July 11, 1988 to July 11, 1990. In their § 1983 claim, Plaintiffs contend that Defendants violated their constitutional rights, namely their rights to be free from sexual discrimination, to travel freely, to contract and to conduct business. Nominal plaintiff Marcia Welch ("Welch") alleges that her right to effect a marital dissolution and equitable distribution of marital property by order of state court was also violated.

Plaintiffs' § 1985(3) claim asserts that Defendants conspired to engage in the gender discriminatory conduct that the § 1983 claim is based on. *Amended Complaint,* ¶ 2. Welch has also brought a pendent state law claim, alleging tortious interference with her business relations and with prospective contractual relations. *Amended Complaint,* ¶ 5.

Welch is an ex-spouse of a former member of the Wildwood Golf Club in Allison Park, Pennsylvania, who sought to have her husband's membership transferred to her after their divorce. The defendants include the Board of Directors of Wildwood Golf Club ("Wildwood"), a Pennsylvania corporation, and the Board of Directors of Stone Lodge, Inc. ("Stone Lodge"), also a Pennsylvania corporation, which owns the real estate on which Wildwood and Stone Lodge conduct their business and social activities. Neither Wildwood nor Stone Lodge are defendants in this action.

Plaintiffs allege that Wildwood's rules are discriminatory because only males members can continue to be Class A members upon the death of, or divorce from, their spouses. Upon Welch's divorce, Wildwood refused to grant her request to transfer membership and Wildwood stock certificates from Thomas Welch to Marcia Welch, which both ex-spouses desired.[1] The Board of Directors allegedly then advised Ms. Welch that effective March 31, 1990, she would no longer be a member of Wildwood.

---

1. Ms. Welch and her former spouse had agreed that Ms. Welch would retain the Wildwood membership as part of the equitable distribution of the parties' marital estate. *Plaintiff's Pretrial Statement,* at unnumbered p. 7.

The Amended Complaint further alleges that Wildwood unlawfully restricts women's access to golf tee times, tennis courts, and to the "all male" 19th Hole bar and grill at Wildwood. As to the individual Stone Lodge directors who are defendants in this action, the only claim against them is the allegation that a stock certificate was not transferred in 1989 from Thomas Welch to Marcia Welch. *Amended Complaint,* ¶¶ 31, 39.

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is not genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In interpreting Rule 56(c), the United States Supreme Court has stated:

> The plain language ... mandates entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court must view the facts in a light most favorable to the non-moving party and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Id.* at 242, 106 S.Ct.

at 2506. The "existence of disputed issues of material fact should be ascertained by resolving 'all inferences, doubts and issues of credibility against the moving party.'" *Ely v. Hall's Motor Transit Co.,* 590 F.2d 62, 66 (3d Cir.1978) (quoting *Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 8874 (3d Cir. 1972)). Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *Josey v. Hollingsworth Corp.,* 996 F.2d 632 (3d Cir.1993); *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.,* 998 F.2d 1224 (3d Cir.1993).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing'— that is, pointing out to the District Court— that there is an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554. If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Petruzzi's IGA Supermarkets,* 998 F.2d at 1230. When the non-moving party's evidence in opposition to a properly supported motion for summary judgment is "merely colorable" or "not significantly probative," the court may grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

## III. PLAINTIFFS' FEDERAL CIVIL RIGHTS CLAIMS

### A. 42 U.S.C. § 1985(3)

#### 1. CLAUSE 1, THE "DEPRIVATION CLAUSE"

Paragraph 2 of Plaintiffs' Amended Complaint alleges a conspiracy to violate Plaintiffs' rights, privileges or immunities secured by the Constitution or laws of the United States in violation of the first clause of 42

U.S.C. § 1985(3).[2] Defendants claim they are entitled to judgment in their favor as a matter of law because Plaintiffs cannot establish that Defendants took any action for the purpose of interfering with any right protected by the United States Constitution against infringement by private persons.

■ Clause 1 of § 1985(3) states in pertinent part, "[i]f two or more persons ... conspire ... for the purpose of depriving ... any person or class of persons of the equal protection of the laws...." To prevail on a claim alleging a private conspiracy in violation of the first clause of § 1985(3), a plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his or her person or property or deprived of any right or privilege of a citizen of the United States. *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971). Plaintiffs have alleged each of the enumerated elements set out in the *Griffin* case.

In *Griffin*, the Supreme Court also instructed that the conspiracy not only must have as its purpose the deprivation of "equal protection of the laws, or of equal privileges and immunities under the laws", but also must be motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators'

action." *Griffin*, 403 U.S. at 102, 91 S.Ct. at 1798. Therefore, in determining the applicability of § 1985(3) to the instant case, an initial determination must be made as to whether the actions which form the basis for this case are the offspring of a "class-based invidiously discriminatory animus" within the meaning of the *Griffin* test.

■ Although the Supreme Court has reserved the question of whether women in general qualify as a protected class under section 1985(3),[3] the Court of Appeals for the Third Circuit has expressly stated that the "wording of § 1985(3) gives no basis for excluding women from its protection." *Novotny v. Great Am. Fed. Sav. & Loan Ass'n*, 584 F.2d 1235, 1242 (3d Cir.1978), *vacated on other grounds*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). Accordingly, following Third Circuit precedent, the Court finds that "women in general" are members of the class statutorily protected by § 1985(3) and, hence, the class as defined in the instant matter, is protected under the statute.

The second issue needing determination is whether Defendants had the necessary intent to deprive Plaintiffs of rights protected under the first clause of § 1985(3). In *Bray*, the Supreme Court instructed that "a § 1985(3) private conspiracy 'for the purpose of depriving ... any person or class of persons of the equal protection of the laws, ... requires an intent to deprive persons of a right guaranteed against private impairment.'" *Bray*, —— U.S. at ——, 113 S.Ct. at

**2.** Section 1985(3) provides in pertinent part, as follows:

(3) Depriving persons of rights or privileges If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory the equal protection of the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or de-

prived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.
42 U.S.C. § 1985(3) (1988).

**3.** As the Supreme Court noted, in discussing the meaning of "class" for purposes of *Griffin's* potential extension of § 1985(3) beyond race, it has "not yet had occasion to resolve the 'perhaps'; only in *Griffin* itself have we addressed and upheld a claim under § 1985(3), and that case involved race discrimination." *Bray v. Alexandria Women's Health Clinic*, —— U.S. ——, ——, 113 S.Ct. 753, 759, 122 L.Ed.2d 34 (1993). However, the Supreme Court further stated that the "animus" requirement demands "a purpose that focuses upon women by reason of their sex." *Bray*, —— U.S. at —— – ——, 113 S.Ct. at 760–61.

762. To date, only two such rights have been recognized: (1) the right to be free from involuntary servitude and (2) the right of interstate travel. *Bray*, — U.S. at —, 113 S.Ct. at 764 (citations omitted).

In the instant proceeding, Plaintiffs claim their rights to be free from sexual discrimination, to travel freely, to contract and to conduct business have been violated. Of these purported violations, however, only the right to travel has been recognized, and then in limited contexts, as a right protected against private interference. *Id.*

■ Notably, all that Plaintiffs can point to by way of connecting Defendants' actions with the right to travel is that the "inability to receive a reciprocal letter [4] affects Plaintiffs' rights to interstate travel." *Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment*, at 17. The Supreme Court has made clear that it is not enough that the conspirators' actions had an effect upon a protected right; rather "its impairment must be a conscious objective of the enterprise." *Bray*, — U.S. at —, 113 S.Ct. at 762. Plaintiffs have failed to show that Defendants consciously impaired Plaintiffs' right of interstate travel.

As Plaintiffs have not met their burden of proof, their claim under the first clause of § 1985(3) will be dismissed.

### 2. SECOND CLAUSE, "THE PREVENTION OR HINDRANCE CLAUSE"

■ The second clause of § 1985(3) covers conspiracies "for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws." 42 U.S.C. § 1985(3). Plaintiffs claim that Defendants violated this provision by "ignor[ing] a valid court order from the Court of Common Pleas of Allegheny County, which set out of post-marital property distribution of the Welch's (sic)." *Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment*, at 19.

By the Supreme Court's own admission, the meaning of the prevention clause is not settled. *Bray*, — U.S. at —, 113 S.Ct. at 769. However, as Mr. Justice Souter pointed out in his concerning/dissenting opinion in *Bray*, the prevention clause is aimed at conspiracies "act[ing] with enough force, of whatever sort, to overwhelm the capacity of legal authority to act evenhandedly in administering the law." *Id.* at —, 113 S.Ct. at 775. The object of such a conspiracy "would need to envision action capable of countering numbers of officers or injuring their responsive capacity (as by disabling their communication system, for example)." *Id.*

Plaintiffs have failed to point to any competent evidence in the record reflecting that the object of the conspiracy at issue in this case is aimed at "thwart[ing] the capacity of law enforcement authority to provide equal protection of the laws." *Id.* Accordingly, Plaintiffs have not established that Defendants' actions constitute a conspiracy in violation of the second clause of § 1985(3) existed and Plaintiffs' claims will be dismissed.

### B. 42 U.S.C. § 1983

■ Paragraph 3 of Plaintiffs' Amended Complaint alleges that Defendants deprived Plaintiffs of their constitutional rights while acting under color of state law in violation of 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (1988). As the statute instructs, two elements must be demonstrated in order to state a cause of action under § 1983: (1) the deprivation of a right secured by the "Constitution and laws" of the United

---

4. According to Plaintiff, Wildwood members "enjoy reciprocity agreements between private clubs across the country that allow members of Wildwood to use the facilities of other private clubs while traveling." *Amended Complaint*, ¶ 56.

States, (2) by a defendant who acted under color of state law. *Moore v. Tartler,* 986 F.2d 682, 685 (3d Cir.1993).

■ Plaintiffs' allegations that Defendants acted under color of state law are two fold, both arising from events relating to Wildwood's formation in 1960. First, Plaintiffs point to the prior relationship between the University of Pittsburgh and Stone Lodge and Wildwood.[5] Second, Plaintiffs contend state involvement by relying on the Commonwealth's grant of a charter, issued by the Court of Common Pleas, Allegheny County.

The University of Pittsburgh became an instrumentality of the Commonwealth of Pennsylvania in July 1966. The University of Pittsburgh–Commonwealth Act, Act of 1966, Pa.Stat.Ann. tit. 24, §§ 2510-201— 2510-211 (1992). As Defendants point out, all of the transactions between the University and Wildwood occurred prior to the enactment of the University of Pittsburgh–Commonwealth Act. Accordingly, at the time of the transactions between the University of Pittsburgh and Wildwood and/or Stone Lodge, the University was a *private* institution and any decision to negotiate with Wildwood and/or Stone Lodge was a private decision.

In *Boyle v. Governor's Veterans Outreach and Assistance Ctr.,* the Third Circuit instructed that "[t]he State will be held 'responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed that of the State.'" 925 F.2d 71, 76 (3d Cir.1991) (quoting *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982)). Plaintiffs have offered no legal or factual support evidencing that

the University of Pittsburgh, acting under color of state law, exercised coercive power or provided any such significant encouragement.[6] Plaintiffs' contention, therefore, must be denied.

Furthermore, Plaintiffs' second argument, that the state's grant of a charter constitutes state action, also must be rejected. In granting charters, the Commonwealth is simply exercising its police powers to regulate. "Such regulation does not make the conduct of the regulated party state action within the meaning of 42 U.S.C. § 1983." *Fischer v. Driscoll,* 546 F.Supp. 861, 864 (E.D.Pa.1982) (holding that in chartering colleges, Pennsylvania is simply exercising its police powers to regulate such institutions). *See also San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.,* 483 U.S. 522, 543–44, 107 S.Ct. 2971, 2984–85, 97 L.Ed.2d 427 (1987) (holding Olympic Committee was not a governmental actor even though Congress granted the Committee a corporate charter); *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972) (holding that group's possession of state liquor license did not make their conduct state action); *Robison v. Canterbury Village, Inc.,* 848 F.2d 424, 428 (3d Cir.1988) (rejecting plaintiffs' argument that developer was a state actor because the state had granted his petition to incorporate the development as a borough); and *Powe v. Miles,* 407 F.2d 73 (2d Cir.1968) (declaring that state's chartering of educational institution did not make the institution's activities state action).

The record is devoid of any evidence that Defendants were required or encouraged by the Commonwealth to deprive Plaintiffs of any rights, privileges, or immunities secured

---

**5.** Specifically, Plaintiffs rely upon the following in an attempt to establish the necessary state action:

(1) In 1960, Stone Lodge purchased the real property from the University of Pittsburgh;
(2) In connection with that sale, the University was granted the right to use Wildwood's athletic facilities for a specified term and existing members of the club which the University had owned and operated were invited to join Wildwood;
(3) Representatives from the University testified in proceedings before the Court of Com-

mon Pleas in support of Wildwood's application for charter in 1960; and
(4) Individuals with faculty memberships in Wildwood served on Wildwood's Board of Directors for a period of time after Wildwood was formed.
*Plaintiffs' Pretrial Statement at unnumbered pages 1–4; Defendants' Statement of Undisputed Facts ("D.S.U.F.") ¶¶ 20–30.*

**6.** In fact, Plaintiffs neither addressed nor defended their section 1983 claims in their Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment.

by the Constitution. Accordingly, as Plaintiffs cannot establish that Defendants acted under color of state law, their claims brought under § 1983 will be dismissed.

## IV. PLAINTIFF WELCH'S PENDENT STATE LAW CLAIMS

Plaintiff Welch alleges that Defendants have intentionally interfered with her business relations and with prospective contractual relations. To date, the Court has exercised pendent jurisdiction over these state law claims by virtue of the federal sections 1985(3) and 1983 claims.

The Court of Appeals for the Third Circuit has held that absent extraordinary circumstances, if the federal counts are dismissed on a motion for summary judgment, then the district court should "ordinary refrain from exercising pendent jurisdiction [over the state law claims]." *Rolo v. City Investing Co. Liquidating Trust,* 845 F.Supp. 182, 215 (D.N.J.1993), *aff'd,* 43 F.3d 1462 (3d Cir.1994) (citations omitted). Given that the summary judgment will be granted for Defendants on the federal claims in this case, and that there are no extraordinary circumstances which would warrant the exercise of jurisdiction, the Court will decline to exercise supplemental jurisdiction over Plaintiff Welch's state law claims. Accordingly, the claim for intentional interference with Plaintiff Welch's business relations and with prospective contractual relations will be remanded to the Court of Common Pleas of Allegheny County. *Angst v. Mack Trucks, Inc.,* 969 F.2d 1530 (3d Cir.1992) (once all federal claims have been dropped from the case, the case should either be dismissed or transferred to the Pennsylvania Court of Common Pleas pursuant to 42 Pa.Cons.Stat.Ann. § 5103(b)).

## V. CONCLUSION

The Defendants, as the moving parties, have discharged their burden by pointing out to the Court that there is an absence of evidence to support Plaintiffs' federal claims. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553.

The Court finds, based on this record, that the non-moving party, Plaintiffs, have not met their burden. As the record shows that there is no genuine issue as to any material fact, Defendants are entitled to judgment as a matter of law. Therefore, Defendants' motion for summary judgment will be granted and judgment will be entered for Defendants as a matter of law on the federal civil rights claims brought pursuant to 42 U.S.C. §§ 1985(3) and 1983.

The Court further finds that as the Plaintiff Marcia Welch, individually, has no viable federal cause of action, her remaining state law claim must be remanded to the Court of Common Pleas of Allegheny County, Pennsylvania. An appropriate order will be entered.

## ORDER OF COURT

AND NOW, this 16th day of February, 1995, it is hereby

**ORDERED** that the motion for summary judgment of Defendants (Document No. 278) is hereby **GRANTED** and judgment is hereby entered for Defendants, as a matter of law on Counts 2 and 3 of Plaintiffs' Amended Complaint, brought pursuant to 42 U.S.C. §§ 1983 and 1985(3).

It is **FURTHER ORDERED** that Count 5 of Plaintiffs' Amended Complaint (the state law claim brought by Plaintiff Welch, individually), be remanded forthwith to the Court of Common Pleas of Allegheny County, Pennsylvania, for disposition.