**Gail MANDY, Plaintiff,**

v.

**MINNESOTA MINING AND MANUFACTURING, a/k/a 3M, Defendant.**

**Civil No. 4–95–774.**

United States District Court, D. Minnesota, Fourth Division.

Sept. 26, 1996.

Jeffrey Robert Anderson, Teresa Kathleen Patton, Reinhardt & Anderson, St. Paul, MN, for plaintiff.

Thomas Patrick Kane, Kathleen Mary Mahoney, David M. Wilk, Oppenheimer, Wolff & Donnelly, St. Paul, MN, for defendant.

## MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION

TUNHEIM, District Judge.

Plaintiff Gail Mandy was employed by defendant Minnesota Mining and Manufacturing ("3M") as a laborer from approximately September 12, 1991 to November 1993. Mandy filed a complaint against 3M on August 3, 1995, alleging sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") and the Minnesota Human Rights Act, Minn.Stat. §§ 363.03, *et seq.* ("MHRA") and claims of negligent training, retention, and supervision. Defendant moved to dismiss or, in the alternative, for

summary judgment as to plaintiff's Title VII and MHRA sex discrimination claims and her negligence claims. Defendant argues that plaintiff's discrimination claims are barred by the statute of limitations, that her negligent supervision and retention claims are preempted by state statutes, and that Minnesota law does not recognize a cause of action for negligent training. Defendant also moved to strike paragraph 15 of plaintiff's complaint. Defendant's motion was referred to Magistrate Judge John M. Mason for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Magistrate Judge Mason filed his Report and Recommendation on April 23, 1996, and recommended that the Court: (1) grant defendant's motion for summary judgment and dismiss plaintiff's sex discrimination and negligence claims; and (2) strike paragraph 15 from plaintiff's complaint pursuant to Rules 8 and 12(f) of the Federal Rules of Civil Procedure. The matter is before the Court on plaintiff's objections to the Magistrate Judge's recommendation that the Court dismiss her sex discrimination and negligence claims.[1] The Court has reviewed de novo plaintiff's objections to the Report and Recommendation on this dispositive pretrial matter, pursuant to 28 U.S.C. § 636(b)(1)(C) and D.Minn. LR 72.1(c)(1). The Court agrees with the Magistrate Judge's conclusion that plaintiff's Title VII sex discrimination claim and her negligent training claim should be dismissed, but rejects the Magistrate Judge's recommendation as to plaintiff's sex discrimi-

nation claim under the MHRA and her negligent retention and supervision claims.

## I. Sex Discrimination Claims

■ Defendant argues that plaintiff's claims are barred because she did not file a charge of discrimination within 300 days of the alleged discrimination as Title VII requires, or within 365 days as the MHRA requires. See 42 U.S.C. § 2000e–5(e)(1); Minn.Stat. § 363.06, subd. 3. Given that plaintiff filed a charge of discrimination on March 21, 1994, plaintiff's discrimination claims are timely only if the alleged sexual harassment occurred on or after March 21, 1993 for purposes of her MHRA claim, and on or after May 25, 1993 for her Title VII claim.

In support of her argument that her claims are timely, plaintiff relies on her complaint, a signed statement she gave 3M investigators on April 8, 1993, and an affidavit filed with her opposition to defendant's motion.[2] Plaintiff's complaint states that she was sexually harassed by her supervisor, William Palmer, beginning on April 22, 1992, and continuing through March 22, 1993. Plaintiff's statement to 3M's investigators and her affidavit contain many specific allegations supporting her claim that Palmer subjected her to repeated and ongoing unwelcome conduct of a sexual nature throughout the time period alleged in her complaint. The allegations include repeated sexual comments about

---

**1.** Plaintiff did not object to the Magistrate Judge's recommendation that paragraph 15 of her complaint be stricken pursuant to Federal Rules of Civil Procedure 8 and 12(f), and there is little consequence to the Magistrate Judge's recommended ruling absent a Rule 12(e) motion for a more definite statement from defendant. Although defendant's motion to strike paragraph 15 of plaintiff's complaint was premised solely on its argument that the claim was time-barred, the Magistrate Judge recommended that even if the claim was timely filed, the Court should strike the paragraph as "impertinent and scandalous" material unnecessary to the complaint, apparently because the factual allegations describe the sexual comments and advances plaintiff allegedly experienced.

The Court will adopt the Magistrate Judge's recommendation on this issue because it was not objected to, but notes that a plaintiff in a sexual harassment case has the burden of stating a

claim showing entitlement to relief with sufficient specificity to survive a Rule 12(e) motion. A prima facie case of sexual harassment may include allegations that the plaintiff was subjected to unwelcome sexual conduct which interfered with a term or condition of her employment. The Court hesitates to restrict the manner in which a plaintiff may plead such a case in the absence of evidence of an improper purpose or lack of evidentiary support, which are adequately addressed by the obligations imposed by Fed. R.Civ.P. 11.

**2.** Defendant's motion is to dismiss or, in the alternative, for summary judgment. Given the Magistrate Judge's recommendation that the Court grant summary judgment on plaintiff's sex discrimination claims, the Court must take all evidence produced by the parties into consideration in its review.

plaintiff's body, sexual advances toward plaintiff, and other unwelcome attention such as telephone calls, cards and gifts. Plaintiff also alleges that Palmer repeatedly referred to his control over her employment status.

Plaintiff's statement to 3M describing specific incidents of unwelcome conduct includes an incident which occurred on Friday, March 19, 1993 at 10:00 a.m., in which Palmer grabbed her sweatshirt, looked down her shirt, commented on her breasts and put his hand on her neck. Plaintiff states that on the next work day, Monday, March 22, 1993, she reported Palmer's behavior. Palmer then came to her work area, grabbed her arm, and, as plaintiff described the incident:

> [Palmer] said, "What are you trying to do to me, get me fired? I didn't say anything. He said, "I want you to go tell them guys that what I did was nothing" again. I said nothing. We went to the office, and the 5 of us were talking about what had happen[ed] and Bill [Palmer] said it was nothing, grabbing at my shirt trying to show what he did. I said, "that's not the way it was." He said that he didn't want anything that was said to leave the office. He really didn't want Butch to know. Bill said he was really scared. (punctuation added).

Plaintiff argues that this March 22 incident, which occurred within the statute of limitations period, was part of a series of related acts of discrimination based on plaintiff's sex and that her claims therefore are timely pursuant to the continuing violation doctrine.

The Magistrate Judge concluded that the March 22 incident was not an incident of discrimination based on sex and therefore did not consider whether it was part of a continuing violation. The Magistrate Judge noted only the part of the incident in which Palmer grabbed plaintiff's arm; he apparently did not consider Palmer's later action of grabbing at plaintiffs shirt to demonstrate what he claimed he had done the previous Friday. The Magistrate Judge concluded that the arm-grabbing incident happened to plaintiff, not because she was female, but because she complained about sexual harassment. He

therefore characterized the incident as one of retaliation, and not harassment, as a matter of law. Because the incident was not harassment, the Magistrate Judge specifically declined to consider whether it was part of a continuing violation which included the prior conduct of incidents of discrimination based on sex.

■■■ The Court disagrees with the Magistrate Judge's analysis for the following reasons. First, in determining whether the incident within the statute of limitations period constituted sexual harassment, the Court must consider " 'the record as a whole' and 'the totality of the circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred.' " *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 69, 106 S.Ct. 2399, 2406, 91 L.Ed.2d 49 (1986) (citing EEOC Guidelines). The Court must look at "the nature, frequency, intensity, location, context, duration, and object or target" of the language and conduct. *Klink v. Ramsey County,* 397 N.W.2d 894, 901 (Minn.App.1986), *rev. denied* (Minn. Feb. 13, 1987) (citing *Meritor* ). As the Magistrate Judge noted, the Eighth Circuit Court of Appeals has made it clear that incidents which are not of an explicitly sexual nature may still constitute sexual harassment:

> We have never held that sexual harassment or other unequal treatment of an employee or group of employees that occurs because of the sex of an employee must, to be illegal under Title VII, take the form of sexual advances or of other incidents with clearly sexual overtones. And we decline to do so now. Rather, we hold that any harassment or unequal treatment of an employee or group of employees that would not occur but for the sex of the employee or employees may, if sufficiently patterned or pervasive, comprise an illegal condition of employment under Title VII.

*Hall v. Gus Constr. Co., Inc.,* 842 F.2d 1010, 1014 (8th Cir.1988); *see also Kopp v. Samaritan Health System, Inc.,* 13 F.3d 264, 269 (8th Cir.1993) (reaffirming *Hall* ).[3] The

---

**3.** Defendant argues that *Hall,* a case applying Title VII to a sexual harassment claim, does not apply to a sexual harassment claim under the

MHRA due to differences in the language of the two statutes. The Minnesota Supreme Court, however, has repeatedly held that principles de-

Court stated that "[i]ntimidation and hostility towards women because they are women can obviously result from conduct other than explicit sexual advances." *Hall,* 842 F.2d at 1014. The Court also noted with approval other Circuit Court opinions holding that threats of physical violence and acts of physical aggression were properly considered sexual harassment. *Id.*

■■■ Against the backdrop of the definition of sexual harassment, the Court must also apply the continuing violation doctrine. Under that doctrine, there may be redress for unlawful discriminatory acts which occurred prior to the statute of limitations period if they are related to violative acts which occurred within the statutory period. A plaintiff may challenge incidents which occurred outside the statute of limitations period if the various acts of discrimination constitute a continuing pattern of discrimination. *Hukkanen v. Int'l Union of Operating Eng'rs, Hoisting & Portable,* 3 F.3d 281, 285 (8th Cir.1993) (when Title VII violations are continuing in nature, the limitations period does not begin to run until the last occurrence of discrimination); *see also Delaware State College v. Ricks,* 449 U.S. 250, 257–58, 101 S.Ct. 498, 503–04, 66 L.Ed.2d 431 (1980); *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558–60, 97 S.Ct. 1885, 1888–90, 52 L.Ed.2d 571 (1977). Minnesota courts have adopted the continuing violation theory in discrimination cases. *See Hubbard v. United Press Int'l, Inc.,* 330 N.W.2d 428, 441 n. 11 (Minn.1983); *Sigurdson v. Isanti County,* 448 N.W.2d 62, 68 (Minn.1989).

Federal courts have recognized two types of continuing violations, a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the limitations period. *Jenson v. Eveleth Taconite Co.,* 824 F.Supp. 847, 877 (D.Minn. 1993); *Laffey v. Independent School Dist. No. 625,* 806 F.Supp. 1390, 1400 (D.Minn. 1992), *aff'd sub nom.,* 994 F.2d 843 (8th Cir.1993), *cert. denied,* 510 U.S. 1054, 114 S.Ct. 715, 126 L.Ed.2d 680 (1994). The issue

in the instant motion is whether defendant has shown that the acts plaintiff alleges occurred within the limitations period are, as a matter of law, not part of a series of related acts. In the incident which occurred within the statute of limitations period, the alleged harasser physically grabbed the plaintiff in a threatening manner because he learned she had complained about his sexual advances toward her on the previous work day, which was outside the limitations period. He also touched her shirt in the presence of other employees to demonstrate what he claimed he had done to her on the previous work day. This touching occurred at his initiative, not as part of any investigation of plaintiff's complaint. The issue for the Court is whether Palmer's actions on March 22 could be construed as part of a series of related acts.

Defendant argues that a bright-line distinction can be drawn in this case between sexually harassing behavior and retaliatory behavior, that Palmer's actions on March 22 were motivated only by retaliation, and that these actions therefore are unrelated to Palmer's previous actions. Defendant's interpretation of the March 22 incident must be rejected because it would require drawing an inference adverse to plaintiff when all inferences must be drawn in plaintiff's favor for purposes of this motion.

■■■ Moreover, even if the Court accepted defendant's characterization of the events on March 22 as motivated solely by reprisal, that would not bar the Court from also considering them to be acts of sexual harassment under Minnesota law. The Minnesota Court of Appeals specifically rejected the argument that acts of reprisal cannot constitute sexual harassment in *Giuliani v. Stuart Corp.,* 512 N.W.2d 589, 595–96 (Minn.Ct.App. 1994). The defendant in *Giuliani* argued that acts of reprisal cannot constitute a continuing sexual harassment violation because the reprisals were merely "consequences" of discriminatory acts. The court found that the retaliatory conduct flowed directly from the sexual harassment and stated:

veloped under Title VII may be applied to cases brought under the MHRA because of the similarities between the two statutes. *See Sigurdson v. Isanti County,* 448 N.W.2d 62, 67 (Minn.1989);

*Sigurdson v. Isanti County,* 386 N.W.2d 715, 719 (Minn.1986); *Hubbard v. United Press Int'l, Inc.,* 330 N.W.2d 428, 441 (Minn.1983). Defendant has not cited any contrary authority.

A "consequence," according to the [Minnesota Supreme Court], is merely a "continuing effect." [The] reprisals were not only continuing effects but were discriminatory acts in and of themselves. [Plaintiff's] claim of sexual harassment is thus not barred by the statute of limitations.

*Id.* at 596. This analysis seems particularly appropriate where the act which defendant urges the court to consider only as an act of reprisal involves physical touching of the plaintiff, and where it "flows directly" from an incident of alleged unwelcome touching which occurred on the previous workday and which could not have been motivated by retaliation.

■ The Court views the acts which occurred within the statute of limitations period on March 22, 1993, as closely related to those which occurred on March 19, 1993 and as part of a series of related acts of alleged harassment which would not have occurred but for plaintiff's sex. The Court's view is guided by reference to federal cases applying the continuing violation doctrine to hostile environment sexual harassment claims. Other federal courts have shared this Court's view that to properly evaluate whether the acts within the limitations period are part of a series of related acts, it must consider all of the alleged related acts. As the court stated in *Jenson:*

In the arena of sexual harassment, particularly that which is based on the existence of a hostile environment, it is reasonable to expect that violations are continuing in nature: a hostile environment results from acts of sexual harassment which are pervasive and continue over time, whereas isolated or single incidents of harassment are insufficient to constitute a hostile environment. Accordingly, claims based on hostile environment sexual harassment often straddle both sides of an artificial statutory cut-off date.

*Moreover, evidence of what occurred prior to the beginning of the statutory period is relevant evidence which may be considered in determining whether a hostile environment existed during the relevant period.* This view is implied in *Meritor:* the Supreme Court considered acts of harass-

ment that had occurred over a four year period. At no time did the Court mention that some of those events occurred outside the relevant time period.

*Jenson,* 824 F.Supp. at 877–78 (emphasis added); *see also Robinson v. Jacksonville Shipyards, Inc.,* 760 F.Supp. 1486, 1494–95 (M.D.Fla.1991) (considering incidents outside limitations period to provide context for actionable incidents in determining whether more recent conduct was a part of the work environment or an aberration). Such an approach is consistent with the Supreme Court's directive that courts consider the nature, context, and frequency of incidents of sexual harassment in considering hostile environment claims. Although the Court is mindful that plaintiff's claim is timely only if a violation exists during the limitations period, a hostile environment claim by its nature is comprised of a series of incidents. Any one incident occurring within the limitations period, if temporally and substantively related to those preceding the limitations period, supports a claim that the environment continued to be hostile into the limitations period. In this case, the incidents within the limitations period occurred one work day after those outside the period, were initiated by the same alleged harasser, and were similar in nature to previous acts of threats and intimidation alleged by plaintiff to have occurred on a regular basis throughout the immediately preceding year.

■ Were the Court to employ the more mechanical analytical framework for applying the continuing violation theory enunciated in *Berry v. Bd. of Supervisors of L.S.U.,* 715 F.2d 971, 981 (5th Cir.1983), and adopted by several other circuit courts, the Court would reach the same result. Three factors were set out in *Berry* to determine whether a continuing violation exists. *Id.* The first was similarity of subject matter. This factor is easily satisfied in this case where all alleged acts were committed by the same person and all involved sexual advances, unwelcome touching or implied threats.

■ The second factor, the frequency of the acts, also points toward a continuing violation in this case. Plaintiff alleged an unbroken string of incidents of sexually moti-

vated behavior by Palmer during an approximately one-year period. The last two incidents, which straddle the limitations period cut-off, occurred on subsequent work days. Noting the implications of the Supreme Court's recognition of hostile environment sexual harassment claims in *Meritor* for the continuing violation analysis it set out in *Berry*, the Fifth Circuit Court of Appeals has held that in a hostile environment, an individual feels constantly threatened even in the absence of constant harassment, and that courts should therefore avoid mechanical calculations of the frequency of harassment in such cases. *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 476 (5th Cir.1989). Courts should instead review the pattern and frequency of harassment and determine whether a reasonable person would feel that the environment was hostile throughout the period alleged. *Id.* Based on the nature and frequency of the acts alleged in the instant case, the Court cannot conclude as a matter of law that a reasonable woman would not find plaintiff's work environment to have been hostile on March 22, 1993.

The third *Berry* factor, permanence, involves inquiry into whether an act outside the limitations period should have triggered the plaintiff's awareness and duty to assert her rights. This factor is difficult to apply in the context of allegations of recurrent incidents of harassment. *See* Ramona L. Paetzold & Anne M. O'Leary–Kelly, *Continuing Violations and Hostile Environment Sexual Harassment: When is Enough, Enough?*, 31 Am. Bus. L.J. 365, 390–92 (November 1993) (noting difficulty of applying third factor of *Berry* test to hostile environment claims). The Court is unable to distinguish any particular alleged incident prior to the limitations period which, as a matter of law, should have spurred plaintiff to assert her rights.

■■■■ For the reasons stated above, defendant has failed to demonstrate that it is entitled to judgment as a matter of law on the statute of limitations with respect to plaintiff's sex discrimination claims under the MHRA. The Court rejects the Magistrate Judge's recommendation and denies defendant's motion to dismiss or for summary judgment as to plaintiff's MHRA sex discrim-

ination claim. The Court agrees with the Magistrate Judge that plaintiff failed to demonstrate any alleged acts of sexual harassment which occurred on or after May 25, 1993; therefore, the Court accepts the Magistrate Judge's recommendation that defendant's motion for summary judgment on plaintiff's Title VII sex discrimination claim be granted.

## II. Negligence Claims

■■■■ The Magistrate Judge recommended dismissing plaintiff's state law claims of negligent supervision and negligent retention because he concluded they were preempted by the MHRA and Minnesota's Workers Compensation Act (WCA). The tort of negligent retention has been recognized in Minnesota law for over 100 years. *Dean v. St. Paul Union Depot Co.*, 41 Minn. 360, 43 N.W. 54, 55 (1889) (employer "had no more right ... to knowingly and advisedly employ, or allow to be employed, ... a dangerous and vicious man, than it would have to keep and harbor a dangerous and savage dog....."). Liability for negligent retention is:

> predicated on the negligence of an employer in placing a person with known propensities, or propensities which should have been discovered by reasonable investigation, in an employment position in which, because of the circumstances of the employment, it should have been foreseeable that the hired individual posed a threat of injury to others.

*Ponticas v. K.M.S. Investments*, 331 N.W.2d 907, 911 (Minn.1983). *See also Restatement (Second) Agency* § 213. The Minnesota Court of Appeals has adopted the following definition:

> Negligent retention ... occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge, or reassignment.

*Yunker v. Honeywell, Inc.*, 496 N.W.2d 419, 423 (Minn.Ct.App.1993), *rev. denied* (Minn. April 20, 1993) (quoting *Garcia v. Duffy*, 492 So.2d 435, 438–39 (Fla.Dist.Ct.App.1986); ci-

tations omitted). Negligent retention imposes liability on the employer for the employee's intentional torts; thus, the employee's acts are almost always outside the scope of employment. *Id.* at 422.

The Minnesota Supreme Court has also recognized the tort of negligent supervision. Minnesota courts look to *Restatement (Second) of Torts* § 317 and *Restatement (Second) Agency* § 213 in defining the parameters of the tort. In *Semrad v. Edina Realty, Inc.,* 493 N.W.2d 528, 534 (Minn. 1992), the court described the tort of negligent supervision as follows:

> [T]he entire thrust of § 317 is directed at an employer's duty to control his or her employee's physical conduct while on the employer's premises or while using the employer's chattels, even when the employee is acting outside the scope of the employment, in order to prevent intentional or negligent infliction of personal injury.

*Id.* The duty imposed is unambiguously limited to preventing an employee from inflicting personal injury upon a third person on the master's premises or inflicting bodily harm by use of the employer's chattels. *Id.* at 534. The tort has also been described as "the failure of the employer to exercise ordinary care in supervising the employment relationship so as to prevent the foreseeable misconduct of an employee causing harm to others." *Fletcher v. St. Paul Pioneer Press,* 1995 WL 379140 at *4 (Minn.Ct.App. June 27, 1995), *rev. denied* (Minn. Aug. 30, 1995), *rev. denied* (Minn. Oct. 10, 1995) (unpublished opinion citing *Cook v. Greyhound Lines, Inc.,* 847 F.Supp. 725, 732 (D.Minn. 1994)).

The Court first considers whether plaintiff has stated a claim of negligent retention or supervision under Minnesota law. Plaintiff has alleged that she complained to Palmer's supervisor in August 1992 about Palmer's harassment, that nothing was done in response to her complaints, and that the harassment became worse after her complaints and continued through March 1993. Plaintiff also alleges that Palmer touched her in a sexual manner on more than one occasion after she complained about his behavior. Plaintiff has therefore alleged that

in the course of her employment, her employer became aware of Palmer's alleged unfitness and failed to take further action. Plaintiff has adequately pleaded a claim of negligent retention. *See Yunker,* 496 N.W.2d at 423. She has also stated a claim for negligent supervision by alleging that after she reported Palmer's sexual harassment, his continued harassment of her was foreseeable to defendant and that defendant had a duty to protect her from further sexual harassment.

Defendant argues that the torts of negligent retention and supervision apply only to violent acts causing physical injury. Some courts have suggested that redress for the tort of negligent retention under Minnesota law is confined to cases involving physical injury. *Leidig v. Honeywell, Inc.,* 850 F.Supp. 796, 807 (D.Minn.1994) ("Although Minnesota courts have never directly addressed this issue, the case law strongly suggests that this duty not to retain employees with 'known dangerous proclivities' is limited to circumstances involving a threat of physical injury."). Minnesota courts have, however, recognized claims of negligent retention involving allegations of sexual harassment. In *Kresko v. Rulli,* 432 N.W.2d 764 (Minn.Ct. App.1988), *rev. denied* (Minn. Jan. 31, 1989), the court considered a negligent retention claim in a case where a sexual harassment claim was also brought and affirmed the trial court's dismissal of the negligent retention claim only because the plaintiff provided no evidence that the employer knew or should have known of the harassment. *Id.* at 769–70. In an unpublished case, the Minnesota Court of Appeals has explicitly held that "the tort of negligent supervision or retention is not limited to negligence that results in physical injuries; it also applies to negligent retention or supervision of a sexual harasser." *DeRochemont v. D & M Printing of Minneapolis,* 1994 WL 510153 at *1 (Minn.Ct.App. Sept. 20, 1994). Minnesota law is thus unclear as to whether the tort of negligent retention is limited to claims involving physical injury or the threat of physical injury.

Even if the tort of negligent retention is limited to cases involving physical injury, however, plaintiff has alleged physical injury

by alleging that she was subjected to physical acts of sexual misconduct after she complained of sexual harassment. It is this Court's view that allegations of such physical conduct are sufficient to satisfy any requirement of a threat of physical injury. While Minnesota law on the parameters of the tort of negligent retention are not well defined, *see Thompson v. Campbell*, 845 F.Supp. 665, 676 (D.Minn.1994), they are sufficiently clear to enable the Court to determine that defendant has not demonstrated it is entitled to judgment as a matter of law on plaintiff's negligent retention claim on the grounds that she failed to allege an act of violent aggression.

With respect to negligent supervision, it is even less clear that Minnesota law requires an allegation of violent aggression. *See Semrad*, 493 N.W.2d at 534 (duty is to control employee's *physical conduct* to prevent intentional or negligent infliction of *personal injury*). Plaintiff has alleged that Palmer's physical conduct subjected her to personal injury and that defendant's failure to control Palmer's behavior was the proximate cause of her injury. Defendant has also failed to demonstrate that it is entitled to judgment as a matter of law on plaintiff's negligent supervision claim for failure to allege an act of violent aggression.

Having determined that plaintiff has stated a claim of negligent retention or supervision, the Court addresses defendant's argument that plaintiff's negligence claims are preempted by the MHRA and the WCA. The Magistrate Judge concluded that the claims were preempted based solely on the holdings in an unpublished Minnesota Court of Appeals case, *Wise v. Digital Equipment Corp.*, 1994 WL 664973 (Minn.Ct.App. Nov. 29, 1994), *rev. denied* (Minn. Jan. 25, 1995). The *Wise* court held that prior to the MHRA there was no duty imposed on an employer to take prompt remedial action to respond to sexual harassment. *Wise*, 1994 WL 664973 at *2. The court held that because the duty alleged in *Wise* was created by the MHRA, the plaintiff's negligence claim was preempted by the exclusivity provision of the MHRA

found in Minn.Stat. §363.11.[4] *Id.* The Court also held that Wise's negligence claim was preempted by the exclusivity provision of the WCA because the injury claimed arose out of and in the course of employment. *Id.; see* Minn.Stat. § 176.031.

The Minnesota Supreme Court has never addressed the issue of preemption of negligent retention or supervision claims by the MHRA or the WCA. The *Wise* case is unpublished and contains little analysis of these important state law issues. The parties' memoranda with respect to this motion was largely focussed on other issues. Although *Wise* appears to hold that negligent supervision or retention claims for failure to respond to sexual harassment are preempted by the MHRA, another unpublished Minnesota Court of Appeals case has held that claims may be brought for negligent supervision or retention of a sexual harasser. *See DeRochemont v. D & M Printing of Minneapolis*, 1994 WL 510153 (Minn.Ct.App. Sept. 20, 1994). In yet another unpublished Court of Appeals case, *Huffman v. Pepsi–Cola Bottling Co. of Minneapolis and St. Paul*, 1995 WL 434467 at *5 (Minn.Ct.App. July 25, 1995), the court held that threats of physical violence by a coworker which occurred during a period of alleged sexual harassment fall outside the MHRA and could support a separate negligent retention or supervision claim. Other courts applying Minnesota law have also allowed plaintiffs to proceed with both harassment and negligent supervision or retention claims, although there is no discussion of preemption in these cases. *See Fletcher v. St. Paul Pioneer Press*, 1995 WL 379140 (Minn.Ct.App. June 27, 1995), *rev. denied* (Minn. Aug. 30, 1995), *rev. denied* (Minn. Oct. 10 1995); *Thompson v. Campbell*, 845 F.Supp. 665 (D.Minn.1994). Under these circumstances, it is unclear how the Minnesota Supreme Court would resolve the MHRA preemption issue in this case.

There is a similar lack of clarity in Minnesota law with respect to preemption by the Workers Compensation Act. Although *Wise* appears to hold that any negligent retention

4. The Minnesota Court of Appeals case of *Vaughn v. Northwest Airlines, Inc.*, 546 N.W.2d 43 (Minn.Ct.App.1996) is consistent with this holding.

or supervision claim involving allegations of sexual harassment is preempted by the WCA, the Minnesota Court of Appeals has held in a published case that a battery claim based on an unwelcome kiss which occurred in the workplace was not barred by the WCA because the kiss had no association with the job itself and therefore did not arise out the employment. *Johnson v. Ramsey County*, 424 N.W.2d 800, 804 (Minn.Ct.App.1988), *rev. denied* (Minn. August 24, 1988). In *Huffman*, another panel of the Minnesota Court of Appeals concluded in an unpublished case that sexual comments and physical contact which occurred at plaintiff's workplace were not associated with her job and that her negligent retention or supervision claims therefore were not barred by the WCA. *Huffman*, 1995 WL 434467 at *5–6 (citing *Johnson* ).

■ These cases, as well as a review of cases from other jurisdictions,[5] compel the conclusion that the Court cannot decide the WCA preemption issue presented in this case without further development of the factual record and additional briefing. Under Minnesota law, to be compensable under the WCA, the plaintiff's injury must arise out of the employment, must be in the course of the employment and must not come within the "assault exception" to the definition of personal injury in the WCA. *Foley v. Honeywell, Inc.*, 488 N.W.2d 268, 271 (Minn.1992). Neither party has briefed the issues of the nature of the injuries in this case, whether they occurred "in the course of" the employment, or whether the assault exception applies. Defendant has not demonstrated that, accepting plaintiff's allegations as true and drawing all favorable inferences therefrom,

plaintiff's alleged injuries are exclusively compensable under the WCA.

In conclusion, the Court finds defendant has failed to demonstrate that it is entitled to judgment as a matter of law at this stage of these proceedings. The Court rejects the Magistrate Judge's recommendation that it grant summary judgment for defendant on plaintiff's negligent retention or supervision claims at this time, but the Court may entertain a motion for partial summary judgement on the preemption issues when the record is more fully developed.

■ With respect to plaintiff's negligent training claim, the Court agrees with the Magistrate Judge's conclusion that Minnesota does not recognize such a cause of action. *See M.L. v. Magnuson*, 531 N.W.2d 849, 856 (Minn.Ct.App.1995), *rev. denied* (Minn. July 20, 1995) ("Minnesota recognizes three causes of action where a claimant sues an employer in negligence for injuries caused by one of its employees: negligent hiring, negligent retention, and negligent supervision."); *Fletcher*, 1995 WL 379140 at *4 (no case law recognizing an independent cause of action for negligent training). Plaintiff did not object to the Magistrate Judge's recommendation that her negligent training claim be dismissed. The Court therefore adopts the Magistrate Judge's Report and Recommendation with respect to the negligent training claim.

### ORDER

Based on the submissions of the parties, the arguments of counsel and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that the Magistrate Judge's Report and Recommendation [Docket No. 14] is

---

**5.** Although some courts have held that their state worker's compensation statutes preempt negligent retention or supervision claims regarding alleged sexual harassment, courts in other jurisdictions have rejected the same preemption arguments. *Compare Fields v. Cummins Employees Fed. Credit Union*, 540 N.E.2d 631 (Ind.Ct.App. 1989) (preemption where plaintiff conceded the harassment arose in the course of employment); *Brooms v. Regal Tube Co.*, 881 F.2d 412, 421 (7th Cir.1989) (preemption under Illinois law), *with Byrd v. Richardson–Greenshields Securities, Inc.*, 552 So.2d 1099 (Fla.1989) (Florida worker's compensation statute did not preempt negligent

hiring and retention claims in sexual harassment case); *Hogan v. Forsyth Country Club Co.*, 79 N.C.App. 483, 340 S.E.2d 116 (1986), *rev. denied* (N.C. July 2, 1986) (negligent retention claim based on sexual harassment not barred by North Carolina worker's compensation statute as emotional injury suffered not natural and probable consequence of employment); *Cox v. Brazo*, 165 Ga.App. 888, 303 S.E.2d 71 (1983), *aff'd sub nom*, 251 Ga. 491, 307 S.E.2d 474 (1983) (negligent retention claim based on knowledge of employee's sexually offensive conduct toward female employees not barred by Georgia worker's compensation statute).

**ADOPTED** as to plaintiff's Title VII sex discrimination claim and plaintiff's negligent training claim and **REJECTED** as to plaintiff's sex discrimination claim under the Minnesota Human Rights Act and plaintiff's negligent retention and supervision claims. Count One (Title VII Sex Discrimination) and the Negligent Training claim in Count Five of plaintiff's Complaint are hereby **DISMISSED.**