Hye S. THOMPSON, Plaintiff,

v.

OLSTEN KIMBERLY QUALITYCARE, INC., Defendant.

Civ. No. 97–11(JRT/RLE).

United States District Court, D. Minnesota.

Sept. 19, 1997.

---

Stephen W. Cooper, Minneapolis, MN, Clayton D. Halunen, Duluth, MN, for Plaintiff.

Andrew J. Boling, Chicago, IL, for Defendant.

## ORDER

TUNHEIM, District Judge.

Based upon the Report and Recommendation of United States Magistrate Judge Raymond L. Erickson, and after an independent review of the files, records and proceedings in the above-titled matter, it is—

ORDERED:

1. That defendant's Motion to Dismiss Count II of plaintiff's Complaint [Docket No. 6] shall be, and hereby is, denied, without prejudice.

2. That defendant's Motion to Dismiss Count III of plaintiff's Complaint [Docket No. 6] shall be, and hereby is, granted.

## REPORT AND RECOMMENDATION

ERICKSON, United States Magistrate Judge.

Aug. 25, 1997.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(B), upon the Motion of the Defendant to Dismiss Counts II and III of the Plaintiff's Complaint for failing to state a claim upon which relief can be granted. See, *Rule 12(b)(6), Federal Rules of Civil Procedure.*

A Hearing on the Motion was conducted on April 10, 1997, at which time the Plaintiff appeared by Stephen W. Cooper and Clayton D. Halunen, Esqs., and the Defendant appeared by Andrew J. Boling, Esq.

For reasons which follow, we recommend that the Motion be granted in part.

### II. *Factual and Procedural Background*

According to the allegations of her Complaint, the Plaintiff is a woman of Korean ancestry who was formerly employed by the Defendant, as a licensed practical nurse ("LPN"), during a period commencing in November of 1995, and extending through May 10, 1996, when her employment with the Defendant was terminated. The Defendant is a health-care provider, and specifically, for a fee, it provides medically trained personnel to individuals, and to businesses, in and around Duluth, Minnesota.

The Plaintiff alleges that she was subjected to multiple incidents of discrimination, which were asserted to have been premised upon her national origin, during her period of employment by the Defendant. In this respect, she maintains that, while employed by the Defendant, she received less favorable treatment than that which was afforded to similarly situated Caucasian employees. Accordingly, the Defendants are alleged to have illegally discriminated against the Plaintiff in terms of her salary, her work schedule, her job opportunities—specifically, in denying her application for a registered nurse ("RN") position—and, ultimately, in the termination of her employment.

As noted, on May 10, 1996, the Plaintiff was terminated by the Defendant. Thereafter, on May 17, 1996, an agent of the Defendant filed a written Statement with the Minnesota State Board of Nursing, which detailed the Defendant's reasons for its termination decision.[1] In particular, the State-

---

1. The Plaintiff did not attach a copy of this Statement to her Complaint, but this has not precluded our consideration of the copy which was provided to the Court by the Defendant, at the time of the Hearing, nor does it require our treatment of the Defendant's Motion as one for Summary Judgment under Rule 56, Federal Rules of Civil Procedure. In this respect, it is well-settled that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Ind.,* 998 F.2d 1192, 1196 (3rd Cir.1993), cert. denied, 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994); see also, *Silver v. H & R Block, Inc.,* 105 F.3d 394, 397 (8th Cir.1997); *Weiner, D.P.M. v. Klais and Company, Inc.,* 108 F.3d 86, 89 (6th Cir.1997); *In re Syntex Corp. Secs. Litig.,* 95 F.3d 922, 926 (9th Cir.1996); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir.1993); *Cortec Indus., Inc. v. Sum Holding,*

ment asserts that the Plaintiff engaged in intentional double billing, and that she improperly denoted her occupational credentials, on her time sheets and related documentation, as being those of an "RN." In addition, the Statement accuses the Plaintiff of having engaged in "gross misconduct;" namely, being absent from work without notice, being verbally abusive to her co-workers, and refusing to complete a scheduled work assignment.

On or about November 20, 1996, the Plaintiff commenced this action in Minnesota State Court and, on January 3, 1997, the action was removed by the Defendant to this Court. The Plaintiff's Complaint contains three Counts. Count I alleges a claim of national origin discrimination, in violation of the Minnesota Human Rights Act ("MHRA"). See, *Minnesota Statutes Section 363.01, et seq.* In Count II, the Plaintiff alleges a common-law claim of defamation and, in Count III, the Plaintiff asserts a claim for negligent supervision and retention.[2] In response to these allegations, after filing its Answer to the Plaintiff's Complaint on January 10, 1997, the Defendant filed, on February 27, 1997, the present Motion to dismiss Counts II and III of the Plaintiff's Complaint.

### III. *Discussion*

A. *Standard of Review.* In considering a Motion to Dismiss under Rule 12(b)(6), we accept as true, in a hypothetical sense, all of the factual allegations of the Plaintiff's Complaint, and we view those allegations in a light most favorable to the Plaintiff. See, *Patterson v. Von Riesen*, 999 F.2d 1235, 1237 (8th Cir.1993); *Schibursky v. International Business Machines Corp.*, 820 F.Supp. 1169,

1175 (D.Minn.1993). Under such an analysis, "[a] motion to dismiss for failure to state a claim should be granted only if it is clear that no relief could be granted under any set of facts, construing the allegations in the complaint favorably to the pleader." *County of St. Charles v. Missouri Family Health Council,* 107 F.3d 682, 684 (8th Cir.1997), citing, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), in turn citing, *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In treating the factual allegations of a Complaint as true, the Court "do[es] not, however, blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990), citing *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987).

B. *Legal Analysis.* Given this procedural and factual backdrop, we separately address the Defendant's arguments for a dismissal of Counts II and III of the Plaintiff's Complaint.

1. *The Motion to Dismiss the Plaintiff's Defamation Claim.*

■ The Plaintiff's claim of defamation is premised upon the Defendant's acts in writing, and in sending, the Statement to the State Board of Nursing, in which it accused the Plaintiff of specific acts of misconduct. The Plaintiff maintains that the asserted acts of misconduct were false and defamatory.

In urging a dismissal of the Plaintiff's defamation claim, the Defendant contends that it was statutorily obligated to report the Plaintiff's alleged misconduct to the State authorities, by operation of Minnesota Stat-

---

*L.P.,* 949 F.2d 42, 48 (2nd Cir.1991), cert. denied, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 879 n. 3 (1st Cir.1991); *Sheppard v. Texas Dept. of Transp.,* 158 F.R.D. 592, 595 (E.D.Tex.1994). Here, the Plaintiff disputes neither the authenticity of the Statement, which the Defendant has furnished, nor the fact that her defamation claim is solely premised upon the Defendant's act in filing this document. As a result, we consider the contents of the Statement in the context of the Defendant's Rule 12(b)(6) Motion.

**2.** While, in Count III, the Plaintiff purports to state a claim for "negligent investigation," the parties agree, at least for the purposes of this Motion, that this claim is subsumed within the Plaintiff's negligent retention claim, and our independent research confirms that this is a proper approach under the governing law of Minnesota. See, *M.L. v. Magnuson,* 531 N.W.2d 849, 857 (Minn.App.1995), review denied (Minn., July 20, 1995); see also, *Cook v. Greyhound Lines, Inc.,* 847 F.Supp. 725, 731–34 (D.Minn.1994) (recognizing that Minnesota recognizes separate torts only for negligent hiring, negligent retention and negligent supervision).

utes Section 148.263, Subdivision 3, which provides as follows:

> A person licensed by a health-related licensing board as defined in section 214.01, subdivision 2, shall report to the board personal knowledge of any conduct the person reasonably believes constitutes grounds for disciplinary action under sections 148.171 to 148.285 by any nurse including conduct indicating that the nurse may be incompetent, may have engaged in unprofessional or unethical conduct, or may be mentally or physically unable to engage safely in the practice of professional or practical nursing.

In addition, the Defendant argues that it is absolutely immune from suit, for its act in reporting the Plaintiff's purported misconduct, by virtue of Minnesota Statutes Section 148.264, Subdivision 1, which provides, as pertinent, as follows:

> Any person, health care facility, business, or organization is immune from civil liability or criminal prosecution for submitting in good faith a report to the board under section 148.263 * * *.

For her part, the Plaintiff concedes that the Defendant could enjoy an immunity from liability for statutorily reporting misconduct, but she argues that the requirement, that the report be in "good faith," infuses the claim of immunity with a factual component, which forecloses a conclusive immunity determination in the context of a Motion to Dismiss. We agree.

At the time of the Hearing on this Motion, there appeared to be no Minnesota case law construing, or otherwise addressing, the statutory provisions at issue here. Quite recently, however, in *French v. Eagle Nursing Home, Inc.* 973 F.Supp. 870 (D.Minn.1997), the District Court, the Honorable Paul A. Magnuson presiding, confronted the issue which has been presented to this Court, but in the framework of a Motion for Summary Judgment. In *French,* as here, one of the allegedly defamatory statements was contained in a report to the State Nursing Board. In arguing for Summary Judgment on the defamation claim, the defendants there noted—as the Defendant does here—that, pursuant to Section 148.263, Subdivision 2, they were required to make the challenged report, and that, as a consequence, pursuant to Section 148.264, subdivision 1, they should be immunized from any defamation claim that arises from the contents of that report. The Court agreed with the defendants, and granted their Motion for Summary Judgment on this claim but, in so doing, the Court expressly observed that the plaintiff had "provided no evidence that the report that [the defendants] submitted to the Nursing Board * * * was made in anything other than good faith." *French v. Eagle Nursing Home, Inc.,* supra at 885.

Here, unlike the plaintiff in *French,* the procedural posture of this case has not afforded the Plaintiff with an opportunity to undertake discovery, so as to explore whether the Defendant's statements to the State Nursing Board were made in "good faith." However, as the Court implicitly recognized in *French,* whether the statements were proffered in good faith is inescapably fact-dependent and, therefore, we conclude that the resolution of this issue is not appropriate through a Rule 12(b)(6) dismissal. While discovery may well demonstrate that the Plaintiff will be unable to rebut the Defendant's good faith immunity, we must accept her allegations, as contained in her Complaint, as factually true for these purposes. Therefore, at this juncture, we recommend that the Motion to Dismiss Count II of the Plaintiff's Complaint be denied as presently premature.[3]

---

**3.** Our conclusion is not altered by the Defendant's reliance upon the decisions in *Woodburn v. St. Paul Pathology,* 1993 WL 267495 (Minn. App., July 20, 1993), review denied (Minn., September 30, 1993), and *Bol v. Cole,* 545 N.W.2d 408 (Minn.App.1996) (*"Bol I"*), aff'd. in part, rev'd in part, *Bol v. Cole,* 561 N.W.2d 143 (Minn. 1997) (*"Bol II"*). Neither of these decisions addresses the application of Minnesota Statutes Sections 148.263 and 148.264 but, instead, they implicate other issues of statutory or common-law privilege and, notably, they arise from Summary Judgment Orders, and not from Rule 12(b)(6) Motions to Dismiss.

To illustrate, *Woodburn* involved the application of Minnesota Statutes Section 147.121, Subdivision 1, which imposes a reporting requirement for physicians which is similar to that which is imposed upon the nursing profession by Section 148.263, Subdivision 2. There, the Court

2. *The Motion to Dismiss the Plaintiff's Negligent Supervision and Retention Claim.*

In Count III of her Complaint, the Plaintiff alleges that, while she was employed by the Defendant, it owed her a duty "to take reasonable steps in supervising and training its management, employees, and workforce," so as to protect her from harm, and the related duty "to respond to complaints and investigate allegations of wrongdoing by its agents, owners, staff or workforce." *Complaint*, at ¶¶ 28–29. The Defendant is alleged to have breached these duties by "engag[ing] in unlawful behaviors and fail[ing] to adequately supervise, investigate, discipline, terminate and train [its] employees about national origin discrimination[,]" and by failing to take reasonable steps to prevent its employees from engaging in national origin discrimination. *Id.* at ¶¶ 30–31. As a result of these asserted breaches, the Plaintiff alleges that she "has suffered, and continues to suffer, severe emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, and loss of wages and other serious injuries." *Id.* at 35.

In its Motion to dismiss this Count, the Defendant first argues that the Plaintiff's negligence claims are preempted by the MHRA, because the same acts underlie both the Plaintiff's negligence and her MHRA claims. In this respect, the Defendant underscores that the MHRA prohibits "an employer, because of * * * national origin * * * to discriminate with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment[,]" *Minnesota Statutes Section 363.03, Subdivision 1(2)(c)*, and it emphasizes that the MHRA further provides that, "as to acts declared unfair by section 363.03, the proce-dure herein provided shall, while pending, be exclusive." *Minnesota Statutes Section 363.11*. Since the allegations of the Plaintiff's Complaint reveal that her negligence claims are premised upon acts of the Defendant, which are asserted to have been "declared unfair" and, therefore, which are unlawful under Section 363.03, the Defendant maintains that the negligence claims are wholly preempted by the MHRA.

In construing the preemptive reach of the MHRA, the Minnesota Courts have not spoken with a consistent voice. The leading case, on the preemptive scope of the MHRA, is *Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374 (Minn.1990). There, the Minnesota Supreme Court held that the MHRA's prohibition against workplace sexual harassment did not preempt a factually parallel claim for common-law battery. *Id.* at 377–78. However, in so holding, the Court expressly foreclosed the possibility that a double recovery could arise from conduct which prompted more than one liability claim, by concluding that a plaintiff can only recover under one paralleling theory, unless the plaintiff can demonstrate, by a clear and convincing showing, that the ostensibly paralleling claims are actually "different in kind." *Id.* at 379.

Thereafter, in *Williams v. St. Paul Ramsey Medical Center*, 551 N.W.2d 483 (Minn. 1996), the Minnesota Supreme Court concluded that, where a plaintiff relies upon the same factual predicates, and seeks redress for the same allegedly discriminatory practices, but alleges separate claims for reprisal under the MHRA, and for retaliation under Minnesota Statutes Section 181.932—the "Whistleblower Act"—the exclusivity of remedies provision of the MHRA, see, *Minneso-*

affirmed a Trial Court's grant of Summary Judgment for the employer, by finding that the employer had a qualified privilege—not a statutory privilege—to report the assertedly defamatory statements. *Id.* at *5. Furthermore, while the Court did observe, in *dicta*, that the statutory privilege of Section 147.121, Subdivision 1, is absolute, *id.* at *6, the language of that Section differs from Section 148.264, Subdivision 1, by imposing no requirement that the report be made in "good faith." See, *Minnesota Statutes Section 147.211, Subdivision. 1*. As for *Bol I*, the case involved a child abuse reporting require-ment, see, *Minnesota Statutes Section 626.556, Subdivision. 3(a)*, and both the Minnesota Court of Appeals and, upon further review, the Minnesota Supreme Court, merely reiterated that the statute immunized good faith reporters. *Bol I*, supra at 410–11; *Bol II*, supra at 147. Accordingly, we conclude that neither *Bol II*, nor *Woodburn*, supports the Defendant's assertion that Section 148.264, Subdivision 1, confers an absolute immunity upon those who comply with the mandatory reporting requirements of Section 148.263, subdivision 2.

ta *Statutes Section 363.11,* operates as a bar to the Whistleblower claim. *Id.* at 483–86.

In the wake of these decisions, in a series of unpublished opinions, panels of the Minnesota Court of Appeals have reached differing conclusions as to whether the MHRA preempts a plaintiff's paralleling claims for negligent supervision, or for negligent retention. Accordingly, in *Wise v. Digital Equipment Corp.,* 1994 WL 664973 * 2 (Minn.App., November 29, 1994), review denied (Minn., January 25, 1995), the Court concluded that the plaintiff's paralleling claim for negligent supervision and retention were preempted by the MHRA, while, in *Huffman v. Pepsi–Cola Bottling Company of Mpls. and St. Paul,* 1995 WL 434467 * 5 (Minn.App., July 25, 1995), review dismissed (Minn., September 20, 1995), the Court rejected the defendant's suggestion that the MHRA preempted the plaintiff's claims for negligent retention and supervision. In other unpublished decisions, the Minnesota Court of Appeals has considered cases which presented paralleling claims under the MHRA, and for negligent supervision and/or negligent retention, without discussing the potential preemptive scope of the MHRA. See, *Fletcher v. St. Paul Pioneer Press,* 1995 WL 379140 * 4 (Minn.App., June 27, 1995), review denied (Minn., August 30, 1995), review denied (Minn., October 10, 1995); *DeRochemont v. D & M Printing of Mpls., Inc.,* 1994 WL 510153 * 1–2 (Minn. App., September 20, 1994). As a result, in recognition of the lack of clarity on the state of the governing Minnesota law, in *Mandy v. Minnesota Mining and Manufacturing,* 940 F.Supp. 1463, 1472 (D.Minn.1996), the District Court declined to rule that the MHRA preempted the plaintiff's claims for negligent retention and negligent supervision.

On February 6, 1997, this uncertainty was seemingly laid to rest by the Minnesota Supreme Court's decision in *Vaughn v. Northwest Airlines, Inc.,* 558 N.W.2d 736 (Minn. 1997). In *Vaughn,* the Court rejected the defendant's argument that the MHRA preempted the plaintiff's paralleling claim for negligence. *Id.* at 745. Citing its earlier decision in *Wirig v. Kinney Shoe Corp.,* supra, the Court declared that *"Wirig* precluded double *recovery* when the same conduct

forms the basis for both an MHRA claim and a tort claim, but we expressly rejected the notion that factually parallel *causes of action* are mutually exclusive." *Id.* [emphasis in original]. Accordingly, the Court concluded that "[the plaintiff's] state common-law negligence claim survives preemption by the MHRA." *Id.*

Nevertheless, on March 5, 1997, not quite one month after the Minnesota Supreme Court issued its decision in *Vaughn,* the Minnesota Court of Appeals, in *Sullivan v. Spot Weld, Inc.,* 560 N.W.2d 712 (Minn.App. 1997), review denied (Minn., April 24, 1997), expressly held that the plaintiff's negligent supervision claim was preempted by his parallel claim under the MHRA. *Id.* at 717. In reaching this conclusion, the Court did not cite either *Wirig,* or *Vaughn,* but instead, premised its holding upon the Supreme Court's decision in *Williams v. St. Paul Ramsey Medical Center,* supra. Specifically, the Court concluded that because "[the plaintiff's] negligent supervision claim alleges discriminatory practices, injuries, and damages identical with those in his MHRA claim," and since the plaintiff "cit[ed] no authority for the proposition that his common law negligent supervision claim against his employer has a basis independent of the MHRA," the claim was preempted. *Id.* As noted, on April 24, 1997, the Minnesota Supreme Court declined to review the decision of the Court of Appeals.

Of course, we interpret the Supreme Court's ruling, in *Vaughn,* as expressing the governing law but, in light of the conflicting authorities, we share the view of the District Court, in *Mandy v. Minnesota Mining and Manufacturing,* that the wiser course, in light of the somewhat unsettled state of Minnesota law, is to decline to recommend a dismissal of Count III on claimed preemption grounds.

 Nevertheless, for independent reasons, we conclude that Count III of the Plaintiff's Complaint fails to state a claim upon which relief may be granted. In her Compliant, the Plaintiff fails to allege that, as a result of the Defendant's asserted negligence, she either suffered an actual physical injury, or was placed under the apprehension

of such an injury. Under Minnesota law, a viable claim of negligent supervision requires the infliction of some sort of physical injury, or the threat of such an injury. See, *Semrad v. Edina Realty, Inc.*, 493 N.W.2d 528, 534 (Minn.1992); *Bruchas v. Preventive Care, Inc.*, 553 N.W.2d 440, 443 (Minn.App.1996); accord, *Piper Jaffray Companies, Inc. v. National Union Fire Ins. Co.*, 967 F.Supp. 1148, 1157 (D.Minn.1997); *Mandy v. Minnesota Mining and Manufacturing*, supra at 1472. Here, as noted, the Plaintiff has not alleged the existence of either an actual physical injury, or the threat of such an injury, and, in response to the Defendant's Motion to dismiss Count III, she has not sought leave of the Court to amend her Complaint so as to allege the existence of either. Therefore, we conclude that the Plaintiff has failed to state a cognizable claim for negligent supervision, under Minnesota law, and we recommend that the Defendant's Motion to dismiss the negligent supervision claim be granted.

 For similar reasons, we recommend that the Defendant's Motion to dismiss the Plaintiff's negligent retention claim be granted. As with the tort of negligent supervision, an actionable claim for negligent retention requires the existence of at least a threat, or reasonable apprehension of actual physical injury. See, *Bruchas v. Preventive Care, Inc.*, supra at 442–43; *Mandy v. Minnesota Mining and Manufacturing*, supra at 1471–72; *Leidig v. Honeywell, Inc.*, 850 F.Supp. 796, 807 (D.Minn.1994). While a plaintiff enjoys a more expansive concept of what constitutes a threat of physical injury when the case involves allegations of sexual harassment, see, e.g., *Bruchas v. Preventive Care, Inc.*, supra at 443; *D.W. v. Radisson Plaza Hotel Rochester*, 958 F.Supp. 1368, 1378 (D.Minn.1997); *Mandy v. Minnesota Mining and Manufacturing*, supra at 1471–72, this is not a sexual harassment case. Accordingly, since the Plaintiff has failed to allege the occurrence of even a threat of physical injury, which has been attributed to the Defendant or its agents, we recommend that the Defendant's Motion to dismiss her negligent retention claim be granted.[4]

NOW, THEREFORE, It is—

RECOMMENDED:

1. That the Defendant's Motion to Dismiss Count II of the Plaintiff's Complaint [Docket No. 6] be denied, without prejudice.

2. That the Defendant's Motion to Dismiss Count III of the Plaintiff's Complaint [Docket No. 6] be granted.

---

4. Moreover, we remain of the view that the tort of negligent retention only imposes liability for acts which fall outside of the employment relationship. See, *Cook v. Greyhound Lines, Inc.*, supra at 732; see also, *Leidig v. Honeywell, Inc.*, 850 F.Supp. 796, 797 (D.Minn.1994); but see, *D.W. v. Radisson Plaza Hotel Rochester*, 958 F.Supp. 1368, 1379 (D.Minn.1997); *M.L. v. Magnuson*, supra at 857 n. 4. As we observed in *Cook v. Greyhound Lines, Inc.*, supra at 732, the very reason for the development of a cause of action for negligent retention was the absence of any means of holding the employer liable, vicariously, through respondeat superior. Accordingly, in *Ponticas v. K.M.S. Investments*, 331 N.W.2d 907, 911 and n. 5 (Minn.1983), where the substantially related doctrine of negligent hiring was inaugurated, the claimant would have had no action under the tort of negligent supervision, because the employee's wrongful act was committed outside the course and scope of his employment. Therefore, the *raison d'etre*, for the genesis of a negligent hiring claim, was the absence of liability under the doctrine of negligent supervision, and this same concern has undergirded the development of the tort of negligent retention. *Cook v. Greyhound Lines, Inc.*, supra at 733. Here, however, the Plaintiff's Complaint is devoid of any allegation that the assertedly tortious conduct of the Defendant's employees or agents was committed while these actors were operating outside of the course and scope of their employment and, as a consequence, the Plaintiff has failed to plead a cognizable claim of negligent retention, which is an independent basis upon which to recommend the dismissal of that claim.