**Shirley KRESKO, Appellant,**

**v.**

**Angelo RULLI, Ramsey County Community Corrections Department, Respondents.**

No. C5-88-206.

Court of Appeals of Minnesota.

Dec. 6, 1988.

Review Denied Jan. 31, 1989.

Dale C. Nathan, Eagan, for appellant.

D. Patrick McCullough, Deborah J. Blees, McCullough, Dyrud & Smith, St. Paul, for respondent Angelo Rulli.

Tom Foley, Ramsey Co. Atty., Elaine Ashbaugh, Asst. Co. Atty., St. Paul, for respondent Ramsey County Community Corrections Dept.

Heard, considered and decided by SHORT, P.J., KALITOWSKI and STONE, JJ.

## OPINION

BRUCE C. STONE [*], Judge.

On June 25, 1982, Shirley Kresko, an intern with the Ramsey County Community Corrections Department (RCCCD) informed management that her supervisor Angelo Rulli was sexually harassing her. Kresko commenced an action based on Title VII and the Minnesota Human Rights Act against Rulli and RCCCD. Her amended complaint included charges against Rulli for assault and battery, intentional infliction of emotional distress, and interference with contract; and against RCCCD for negligent retention and wrongful termination. The trial court divided the proceedings into a pretrial on evidentiary issues, a court trial on the sexual harassment issue, and a jury trial on causes of action other than sexual harassment. Subsequently, the trial court dismissed all causes of action except assault and battery and sexual harassment. The jury found in favor of Rulli on the assault and battery, and the trial court found no sexual harassment because Rulli's sexual advances were not unwelcome. Kresko's motion for amended findings or a new trial was denied and she appeals.

## FACTS

Shirley Kresko first met Angelo Rulli in the late 1970's. They met again during the 1980–81 school year at Lakewood Community College. Kresko, recently divorced, was a student and Rulli was a part-time instructor.

Kresko graduated from Lakewood in June 1981, and enrolled that fall at Metropolitan State University to complete her four-year degree. In January 1982, Kresko selected a student internship with the Volunteers in Corrections (VIC) program knowing that Rulli was the VIC coordinator. Kresko began her internship with VIC on February 1, 1982, and was dedicated in performing her duties.

In March 1982, Rulli complimented Kresko on her appearance in a white angora sweater. Kresko responded negatively but later wrote a letter, apologizing for not graciously accepting Rulli's compliment. Her letter also included phrases like, "Why am I afraid to tell you I like you?"; stated that she had "a strong liking for him"; and she had "strong feelings" for him.

Between March 17, 1982, and April 30, 1982, Kresko and Rulli had a number of encounters which Kresko now alleges were incidents of sexual harassment. The parties shared meals and on several occasions drove to isolated spots where they engaged in mutual kissing and "petting." They also discussed their mutual discomfort with their relationship because of Rulli's marriage.

On May 3, Kresko invited Rulli to her home for lunch. No one else was home. According to Kresko, Rulli sexually assaulted her by "grabbing her, touching her, by seeking to molest her, by removing her pantyhose, and by attempting to force her to engage in intercourse with him." Rulli testified they engaged in some necking and fooling around and tickling each other, and he eventually slid off the couch to the floor. After this exchange, whatever occurred, Kresko straightened her clothing and proceeded to the kitchen. She prepared a lunch of peanut butter sandwiches which the two of them ate, and they returned to the office.

On May 10, 1982, Kresko gave Rulli a lengthy letter which began "Am I a friend, a lover, or _____? Is it love?" The letter was very affectionate but expressed reservation about their "relationship" because Rulli was married. In May and June there were several more incidents where the par-

[*] Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

ties drove to secluded places and parked. The parties had lunch on June 18, at which Rulli told Kresko he was sorry and wanted to work on his marriage.

On June 25, 1982, Kresko reported the alleged sexual harassment to one of RCCCD's acting directors. On Monday, June 28, 1982, Kresko met with Don Langland and Ray Lescher and made her claims. She was fuzzy on times and places but said she kept a journal which would provide that information. She was asked to review her journal and Lescher met with her again to review her allegations. Lescher and Langland understood that Kresko's internship was to end on June 30. At the June 28 meeting, because she was upset and might be uncomfortable, they told her she did not need to come in the last two days. After this meeting Rulli was promptly removed from his position, pending an investigation. Lescher signed off on Kresko's school competence and she received five competencies (each competency is roughly equal to three credits) for five months' work. Lescher saw that she was paid through June 30.

Ramsey County's investigation showed that several other women in RCCCD felt Rulli had acted inappropriately toward them. Rulli's actions were characterized as irritating or dumb, but the women testifying at trial did not believe they constituted sexual harassment. There was no evidence that management knew, or should have known, about Rulli's activities. The testimony of some of the women was allowed at the court portion of the trial but not to the jury.

Following the county's investigation Rulli was removed from his position, demoted, and transferred. This action was taken because, harassment or not, Rulli's activities were not appropriate for a supervisor of volunteers.

Kresko was offered a non-paid internship with Ramsey County Domestic Division which she declined. She began a job the first week in July 1981 at Metro State University which paid the same as her RCCCD internship.

Kresko alleged that as a result of Rulli's activities, she suffered headaches, backaches, and menstrual disorders. However, medical testimony showed she was treated for all these ailments prior to her internship at RCCCD.

Kresko also claimed psychological damage. Her treating psychologists testified that she suffered from post-traumatic stress disorder as a result of sexual harassment by Rulli. Damage included chronic anxiety, impaired relationship (especially with men), a sense of low self-esteem, and a feeling of blame.

Defendant's experts, based on a review of Kresko's records and a four-hour examination, concluded that Kresko's relationship with Rulli was not traumatic enough to cause post-traumatic stress syndrome. They also concluded Kresko had ambivalent feelings about her relationship with Rulli and sent mixed signals about welcoming his advances.

## ISSUES

1. Are the trial court's findings supported by the evidence?

2. Did the trial court abuse its discretion in declining to admit evidence to the jury of other alleged wrongdoing on respondent's part?

3. Did the trial court abuse its discretion in bifurcating the proceeding or in declining to use an advisory jury?

4. Did the trial court err in dismissing appellant's charges of wrongful discharge, interference with contract, and negligent retention?

5. Did the trial court abuse its discretion in not granting a new trial on the basis of alleged attorney misconduct?

6. Did the trial court abuse its discretion by ordering an adverse psychological exam after the start of trial?

7. Did the trial court correctly analyze appellant's allegations of sexual harassment?

## ANALYSIS

### I.

■ The trial court's findings will not be disturbed if they are supported by the evi-

dence. *Hubbard v. United Press International,* 330 N.W.2d 428, 441 (Minn.1983). This court must view the evidence in the light most favorable to the trial court's findings. *Caroga Realty Co. v. Tapper,* 274 Minn. 164, 169, 143 N.W.2d 215, 220 (1966). The credibility of the witnesses is determined by the trier of fact. *Sauber v. Northland Insurance Co.,* 251 Minn. 237, 249, 87 N.W.2d 591, 600 (1958).

Kresko argues that the court's findings are not supported by the evidence because the evidence shows that Rulli was the initiator and aggressor in some of the sexual activities engaged in by Rulli and Kresko. Appellant then argues that the court was unreasonable because it did not believe the other women who claimed sexual harassment. She also claims that if the court had allowed the jury to hear evidence of Rulli's prior relationship, the jury would have concluded Rulli forced himself on and assaulted Kresko.

Sexual harassment is prohibited under state and federal law. Minn.Stat. §§ 363.-01, subd. 10a, .12 (1986); 29 CFR § 1604.11(a). The United States Supreme Court has held that the correct inquiry in sexual harassment cases is "whether [appellant] by her conduct indicated that the alleged sexual advances were unwelcome, not whether her actual participation * * * was voluntary." *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 2406, 91 L.Ed.2d 49 (1986). There is ample evidence that Rulli's advances were not unwelcome.

1. Kresko and Rulli frequently lunched together and discussed personal matters.

2. Kresko wrote Rulli at least one personal, affectionate note.

3. The parties engaged in several incidents of mutual kissing and petting.

4. There is evidence to show that Kresko deliberately chose the RCCCD internship because Rulli was there.

5. Aside from Larry Alvarez [a fellow intern] and her daughter, Alana, respondent never notified anyone of the complained of activity.

Kresko argues she was afraid to resist because she feared losing credits. However, the evidence showed that Kresko saw herself as fairly assertive. She also felt she had a good relationship with Rulli's immediate supervisor and had no trouble discussing another intern's dismissal with him. There was also evidence that Kresko had no qualms about filing complaints concerning a dentist and judge when she felt she or her family were treated unfairly. Finally, prior to and during the time at issue, Kresko was actively involved in school politics and had no trouble asserting herself under those circumstances. The logical conclusion is that Kresko did not complain because either the advances were welcome, or at least she had ambivalent feelings.

## II.

Kresko wished to introduce the evidence to the jury of Rulli's relationships with other women to show a pattern or habit. The trial court correctly excluded this because (1) the nature of the other incidents are not similar to Rulli's relationship with Kresko; (2) most of the other women did not consider the incident sexual harassment; and (3) the trial court found the evidence on the other incidents was not credible.

The trial court has discretion in determining whether or not evidence of other wrongs should be admitted. *State v. Johnson,* 256 N.W.2d 280, 286 (Minn.1977). This decision will not be reversed unless there is a clear abuse of discretion. *State v. Klotter,* 274 Minn. 58, 63, 142 N.W.2d 568, 571 (1966). The court correctly found that the prejudice of introducing the evidence outweighed any evidentiary value.

Appellant wished to introduce the evidence to show that Rulli made a habit of sexually harassing and assaulting women with whom he had a position of power. Minnesota Rules of Evidence 404(b) provides:

(b) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he

acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The evidence can be introduced to show opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake. None of these is at issue here. Rulli admits that most of the alleged incidents occurred, but maintains they were consensual. The court did not abuse its discretion in declining to admit evidence on Rulli's character to the jury portion of the trial.

### III.

■ Appellant argues she was denied a fair trial because of bifurcation of the proceedings and failure to use an advisory jury. The trial court has broad discretion to order separate trials and will not be reversed on appeal absent an abuse of discretion. *Jensen v. Peterson*, 264 N.W.2d 139, 144 (Minn.1978). We find no abuse of discretion in this case.

There is no right to a jury in sexual harassment cases. *See* Minn.Stat. § 363.14, subd. 2 (1986); Minn.R.Civ.P. 39.-02. The trial court had discretion to impanel an advisory jury and did not abuse its discretion in choosing not to do so.

### IV.

Appellant argues that the trial court erred in dismissing her charges of wrongful discharge, interference with contract and negligent retention. The actions were dismissed by the trial court at the end of the proceedings for failure to show a prima facie case, and we find no error in that decision. Minn.R.Civ.P. 41.02; *Paradise v. City of Minneapolis*, 297 N.W.2d 152, 155 (Minn.1980).

#### A. *Wrongful Discharge*

■ An employee is wrongfully discharged when he or she is fired for reasons which are against public policy, such as reporting a violation of a law. *Phipps v. Clark Oil & Refining Corp.*, 408 N.W.2d 569, 571 (Minn.1987). *See* Minn.Stat. § 181.932 (Supp.1987).

■ The evidence shows that when Kresko reported the alleged sexual harassment, her internship was just two or three days short of coming to its natural end. She was told not to come in the last two days out of consideration for her. There is simply no evidence to show Kresko was wrongfully discharged.

#### B. *Interference with Contract*

■ For interference with contract, a plaintiff must show:

1. the existence of a contract,
2. the alleged wrongdoer's knowledge of the contract,
3. intentional procurement of a breach,
4. lack of justification, and
5. damages.

*Potthoff v. Jefferson Lines, Inc.*, 363 N.W.2d 771, 775 (Minn.Ct.App.1985). The evidence shows that RCCCD's management believed Kresko's internship ended June 30 and Kresko admits she did not tell them differently. There was no contract to breach, and even if there were, RCCCD was unaware of it.

#### C. *Negligent Retention*

Liability is predicated on the negligence of an employer in placing a person with known propensities, or propensities which should have been discovered by reasonable investigation, in an employment position in which, because of the circumstances of the employment, it should have been foreseeable that the hired individual posed a threat of injury to others.

*Ponticas v. K.M.S. Investments*, 331 N.W.2d 907, 911 (Minn.1983). To find negligent retention, the court must find that the employer knew or should have known of the employee's negative activities. Rulli had an excellent work record and the RCCCD received no complaints prior to this lawsuit. *After* the complaint, several women came forward to complain about isolated instances of inappropriate behavior on Rulli's part. There was no evidence to show that

RCCCD management knew or should have known of Rulli's inappropriate behavior.

As soon as management was informed of the alleged incidents of sexual harassment, they took immediate, appropriate action in suspending (and eventually demoting) Rulli and beginning an investigation promptly. The trial court did not err in dismissing the negligent retention cause of action.

## V.

■ Kresko complains that there was misconduct by Rulli's counsel because he elicited evidence about Kresko's subsequent relationships with men, including an incident of date rape. The decision to grant a new trial for attorney misconduct is wholly in the discretion of the trial court and will not be reversed on appeal except for a clear abuse of discretion. *Wild v. Rarig*, 302 Minn. 419, 433, 234 N.W.2d 775, 785 (1975), *appeal dismissed, cert. denied,* 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976). Counsel for appellant made no objection and did not ask for a curative instruction from the bench. *See Patton v. Minneapolis St. Ry. Co.,* 247 Minn. 368, 375, 77 N.W.2d 433, 438 (1956). Counsel's examination in this case was proper. Kresko affirmatively placed this aspect of her life at issue and respondent Rulli was entitled to vigorous cross-examination. The trial court did not abuse its discretion in not granting appellant a new trial on the basis of attorney misconduct.

## VI.

Kresko claims the trial court abused its discretion in ordering an adverse psychological exam after the trial started. The trial court has broad discretion in determining whether a psychological examination should be ordered pursuant to Minn.R. Civ.P. 35.01. *Haynes v. Anderson,* 304 Minn. 185, 232 N.W.2d 196 (1975); *Hill v. Hietala,* 268 Minn. 296, 128 N.W.2d 745 (1964); *Wills v. Red Lake Municipal Liquor Store,* 350 N.W.2d 452 (Minn.Ct.App. 1984). Absent an abuse of discretion, "an appellate court will not review or correct the trial court's discretionary action in permitting or refusing to compel" an examination under Minn.R.Civ.P. 35.01. *Hill,* 268 Minn. at 297–98, 128 N.W.2d at 747. The burden of proof which rests upon appellant to show that the trial court abused its discretion in granting an order for an adverse examination is an affirmative showing of prejudice. *Id.* at 299, 128 N.W.2d at 748; *Higgins v. Lufi,* 353 N.W.2d 150, 155–156 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Oct. 11, 1984).

■ Kresko's psychological status was at issue because of the psychological damage she allegedly suffered. Appellant listed and called a psychotherapist and two psychologists as expert witnesses. When a party's mental condition is in controversy, the trial court may order an adverse exam. Minn.R.Civ.P. 35.01. Such an exam should be requested early, although there is no time limit specified in the rule. The trial court has discretion to permit an exam after the trial starts. *Hill,* 268 Minn. at 298, 128 N.W.2d at 747–48.

■ In addition to claiming the order for exam was untimely, Kresko cites *Robinson v. Jacksonville Shipyards, Inc.,* 118 F.R.D. 525 (M.D.Fla.1988) for the proposition that psychological exams should never be ordered in sexual harassment cases. *Robinson* was a "hostile work environment" case where the plaintiff was requesting damages for days lost from work because of anxiety, depression, and emotional distress caused by the hostile work environment. The plaintiff was not asking for damages for ongoing psychological problems as a result of any defendant's actions. "A backpay award is not compensatory damages for harm suffered * * *." *Id.* at 531. *Robinson* stands for the proposition that a sexual harassment action does not *automatically* place the plaintiff's mental condition at issue. In the present case, Kresko placed her mental condition at issue and the trial court did not abuse its discretion in ordering a psychological exam.

## VII.

Because the trial court did not explicitly cite to *McDonnell Douglas Corp. v. Green,*

411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), appellant argues the trial court did not apply the *McDonnell Douglas* factors in its analysis of the alleged sexual harassment. *See Sigurdson v. Isanti County,* 386 N.W.2d 715 (Minn.1986); *Bersie v. Zycad Corporation,* 399 N.W.2d 141 (Minn. Ct.App.1987). The trial court found:

11. Plaintiff Kresko, in her pleadings and direct testimony, established a prima facie case that Mr. Rulli's advances were unwelcome, shifting the burden to the Defendants to rebut the prima facie showing.

12. The Defendants met their burden of rebutting the prima facie case, which shifted the burden of proof by a preponderance of the evidence back to Plaintiff.

13. The preponderance of the evidence showed that Ms. Kresko welcomed Mr. Rulli's sexual advances.

While the trial court did not cite to *McDonnell Douglas,* it clearly applied the required analysis in its findings.

## DECISION

AFFIRMED.