D.W., A.K., S.M., T.M., A.R.,
and C.H., Plaintiffs,

v.

RADISSON PLAZA HOTEL ROCH-
ESTER; Chafoulias Companies, Inc.;
Chafoulias Management Co.; BDG5
Limited Partnership; Maddux Proper-
ties, Inc.; Premier Security, Inc.; G.A.C.
Corporation; Gus A. Chafoulias and An-
drew C. Chafoulias, Defendants.

Civil File No. 3–96–514.

United States District Court,
D. Minnesota,
Third Division.

March 12, 1997.

Lori C. Peterson, Chrystal N. Lifson, Peterson Law Office, Minneapolis, MN, for plaintiffs.

Joel M. Muscoplat, Pustorino Pederson Tilton & Parrington, Minneapolis, MN, Arch Y. Stokes, John R. Hunt, Stokes & Murphy, Atlanta, GA, Robert L. Murphy, Paul F. Sorrentino, Stokes & Murphy, San Diego, CA, for defendants.

## MEMORANDUM AND ORDER

MAGNUSON, Chief Judge.

This matter is before the Court upon Defendants' Motion to Dismiss. Based on the record and the arguments of the parties on this matter, the Court determines that Defendants' motion should be granted in part and denied in part.

## BACKGROUND

The six Complaints filed against Defendants relate similar factual accounts of alleged sexual harassment and abuse taking place, for the most part, on the premises of the Radisson Plaza Hotel Rochester ("Radisson"), located in Rochester, Minnesota. Since these cases involve common questions of law and fact, the lawsuits were consolidated on October 25, 1996, by order of Magistrate Judge Jonathan Lebedoff. Pursuant to the order of consolidation, Plaintiffs were to file and serve a consolidated Amended Complaint in this matter within twenty days. To date, Plaintiffs have not made this filing.

In general, Plaintiffs claim that Defendants created a hostile work environment, in violation of state and federal law, and that Defendants are liable for various tortious acts allegedly committed by hotel guests and employees. The specific allegations, however, vary from person to person in ways that are pertinent to the disposition of this motion as to each individual Plaintiff. Accordingly, the factual allegations contained in the individual Complaints are summarized below.

Plaintiff D.W. ("D.W.") was employed by Defendants from April 1994 to May 1995 as a concierge at the Radisson. During her employment, D.W. claims that she was subjected to sexual harassment and abuse at the hands of foreign nationals from the United Arab Emirates who were staying at the hotel ("foreign guests"). In her Complaint, D.W. recounts several specific incidents of verbal and physical sexual harassment and abuse initiated by these foreign guests. The attacks allegedly occurred in May 1994, August 1994, and the last incident on May 13, 1995. (*See* D.W. Compl. ¶¶ 47, 51, 54, 55, 56.) After leaving her employment with the Radisson, D.W. claims that Defendants allowed or aided one foreign guest to find her and to continue harassing her. (*See id.* ¶ 57.) D.W. maintains that after each attack she informed Radisson managers and supervisors who refused to take action against the perpetrating guests. D.W. further alleges that Defendants allowed, and even encouraged, these foreign guests to commit their illicit and illegal acts against her.

Plaintiff A.K. ("A.K.") was employed by Defendants from April 1993 to May 1995 in the Radisson's Plaza Club, the hotel's lounge. During her employment, A.K. alleges that she was the victim of sexual harassment perpetrated by foreign guests of the hotel. All the alleged acts of harassment took place on hotel premises and occurred in "April of 1995" and "the spring of 1995," with the last incident occurring on May 17, 1995. (*See* A.K. Compl. ¶¶ 46, 49, 51, 57.) Although she complained to hotel management, A.K. maintains that no action was taken.

Plaintiff S.M. ("S.M.") was never employed by Defendants. She is a nurse who formerly resided in Rochester, Minnesota. On July 18, 1993, S.M. alleges that she was invited to attend a social function at the Radisson by

an employee of the hotel. (*See* S.M. Compl. ¶ 35.) At the event, S.M. met a foreign guest of the hotel who allegedly drugged and raped her in his hotel room. S.M. pursued sexual assault charges against the individual, but Defendant Gus Chafoulias allegedly contacted local police instructing them not to prosecute the perpetrator. In addition, S.M. contends that the Radisson employee who invited her to the social function informed hotel management that S.M. was in danger while the rape was occurring, yet no action was taken to check on her safety.

Plaintiff T.M. ("T.M.") was employed by Defendants from October 1991 to May 1995 at the Radisson. T.M. maintains that several foreign guests sexually harassed her on May 1 and May 11, 1995, while she delivered room service at the hotel. (*See* T.M. Compl. ¶¶ 52, 53.) T.M. further alleges that two male employees of the Radisson made sexually explicit comments to her, while another male employee harassed a female co-worker and had "pinups" posted in the hotel's storage area. (*See id.* ¶¶ 56–58.) Defendants allegedly took no action in response to T.M.'s complaints to management.

Plaintiff A.R. ("A.R.") was employed by Defendants from September 1994 to August 1995 in the Radisson's Plaza Club. During her employment, A.R. alleges that she was the victim of sexual harassment perpetrated by foreign guests of the hotel. The alleged acts of harassment occurred at the Radisson, apparently throughout her term of employment. (*See* A.K. Compl. ¶¶ 46–52, 59.) Although she notified hotel management, A.K. claims that no action was taken.

Plaintiff C.H. ("C.H.") was employed by Defendants from April 1993 to May 1995 as a concierge and later as a supervisor of the Radisson's Plaza Club. C.H. alleges several specific instances of sexual harassment and abuse perpetrated by foreign guests at the hotel, occurring in November 1993, the "fall of 1994," and "the end of August of 1994." (*See* C.H. Compl. ¶¶ 48, 52, 54.) After taking maternity leave in March 1995, C.H. claims that she continued to be subjected to the hostile work environment at the Radisson. The continued subjection allegedly arose from C.H. fielding calls at home from D.W.

and A.R. who relayed their personal accounts of sexual harassment. (*See id.* ¶¶ 58, 67.) In addition, C.H. claims hotel management called her at home on two occasions regarding the alleged attacks on D.W. (*See id.* ¶¶ 60–64.) During those conversations management allegedly asked C.H. whether she was going to return to work. (*See id.*) Finally, C.H. claims that Defendants permitted the foreign guests to kill baby lambs and deposit their bodies in the hotel hallways. (*See id.* ¶ 71.) Despite repeated reports to management about these alleged occurrences, C.H. maintains that Defendants took no action.

All six Plaintiffs assert a series of broad allegations against Defendants. Generally, the allegations of liability are premised on the contention that Defendants knew about the conduct of the foreign guests, yet took no meaningful action to prevent its recurrence. In particular, Plaintiffs allege that Defendants maintained no system or policy for dealing with sexual discrimination and harassment occurring on the Radisson premises. Moreover, Plaintiffs D.W., T.M., and C.H. allege that Defendants, and their employees and agents, actively participated in the sexual discrimination and harassment.

On June 7, 1996, Plaintiffs filed individual Complaints in federal court. The Complaints contain a litany of claims based on numerous statutes and doctrines. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants now bring a motion to dismiss specific counts and parties from Plaintiffs' Complaints. In general, Defendants claim that the pleadings are infirm because Plaintiffs seek to hold Defendants liable for the conduct of third-party guests of the Radisson hotel. Defendants contend that granting its motion will reduce this lawsuit to its essence: a dispute concerning allegations of hostile work environment under Title VII.

## DISCUSSION

For the purposes of Defendants' Motion to Dismiss, the Court takes all facts alleged in Plaintiffs' Complaints as true. *See Westcott v. Omaha*, 901 F.2d 1486, 1488 (8th Cir.1990). Further, the Court must construe the allegations in the Complaints and reasonable inferences arising from the Complaints favorably

to Plaintiffs. *See Morton v. Becker*, 793 F.2d 185, 187 (8th Cir.1986). A motion to dismiss will be granted only if "it appears beyond doubt that the Plaintiff can prove no set of facts which would entitle him to relief." *Id.; see Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The Court reviews the present motion with these standards in mind.

### 1. Timeliness of Claims Under Title VII and the Minnesota Human Rights Act

Plaintiffs D.W., A.K., T.M., A.R., and C.H., all former Radisson employees, claim that Defendants' conduct violated Title VII and the Minnesota Human Rights Act ("MHRA"). In particular, the five Complaints allege causes of action for sexual harassment under Title VII and the MHRA, as well as sex discrimination, constructive discharge, and retaliation and reprisal under Title VII. Defendants argue that the Title VII and the MHRA claims of D.W., A.K., T.M., and C.H. are time-barred and must be dismissed. In response, Plaintiffs argue that their claims are timely since the alleged acts constitute a continuing violation, part of which fell within the statute of limitations period; or alternatively, the statute of limitations was tolled during the parties' mediation efforts such that the subsequent filings were timely.

■ To bring a private civil action under Title VII of the Civil Rights Act of 1964, a plaintiff must file a timely Charge of Discrimination with either the Minnesota Department of Human Rights ("MDHR") or the Equal Employment Opportunity Commission ("EEOC"). *See E.E.O.C. v. Commercial Office Prods. Co.*, 486 U.S. 107, 110–12, 108 S.Ct. 1666, 1668–70, 100 L.Ed.2d 96 (1988); *Worthington v. Union Pacific R.R.*, 948 F.2d 477, 479 (8th Cir.1991). Because Minnesota is a deferral state, a complainant must file a charge within 300 days from the date of the alleged unlawful employment action. *See* 42 U.S.C. § 2000e–5(e)(1); *see also* 29 C.F.R. §§ 1601.74(a) (listing MDHR as a designated state deferral agency). "Title VII expressly authorizes the EEOC to enter into worksharing agreements with state and local agencies

to promote effective enforcement of the statute." *Worthington*, 948 F.2d at 480 (citing *Commercial Office Prods.*, 486 U.S. at 112, 108 S.Ct. at 1669–70, 42, U.S.C. §§ 2000e–8(b); 2000e–4(g)(1) (1988)). Pursuant to the workshare agreement between the EEOC and the MDHR, "each agency serves as the agent of the other for the purpose of receiving a charge." *Johnson v. Hubbard Broad., Inc.*, 940 F.Supp. 1447, 1460 (D.Minn.1996) (taking judicial notice of the workshare agreement between the EEOC and the MDHR in finding that plaintiff who filed charge with the EEOC was deemed to have filed it with the MDHR); *see* Minn. Rule 5000.0400, subpt. 2a ("A charge filed with EEOC or HUD may be referred to the [MDHR]. The charge is considered filed on the date the [MDHR] receives from the federal agency sufficient material for a charge to be considered filed under part 5000.0400."). Furthermore, "the workshare agreement provides that the EEOC will initially process all charges." *Johnson*, 940 F.Supp. at 1460. By entering into such an agreement, the MDHR "terminates" its proceedings and the EEOC immediately exercises jurisdiction over the charge. *Id.* (citing *Commercial Office Prods.*, 486 U.S. at 110, 108 S.Ct. at 1668–69). A plaintiff must receive a notice of a right to sue from the EEOC before proceeding with a Title VII claim. 42 U.S.C. § 2000e–5(f)(1). Upon receipt of such a notice, a civil action must be brought within ninety days. *Id.*

In this action, Plaintiffs D.W., A.K., T.M., and C.H. each claim that they filed their Title VII charges with the EEOC on or about March 6, 1996, and received a "Notice of Right to Sue" letter on or about March 11, 1996. Plaintiffs' individual lawsuits were all filed in United States District Court on June 7, 1996, which was within the ninety-day statutory period. Defendants contend, however, that Plaintiffs failed to file their charges with the EEOC within 300 days of the last unlawful act. The Court does not agree.

■ "When an employer fails to protect an employee from sexual harassment, thereby forcing the employee to endure an offensive environment or to quit working, the

harassment becomes a 'condition of employment' prohibited by Title VII." *Zabkowicz v. West Bend Co.,* 589 F.Supp. 780, 783 (E.D.Wis.1984) (citations omitted). If the alleged Title VII violations are "continuing in nature," then the 300–day limitations period "contained in § 2000e–5(e)(1) does not begin to run until the last occurrence of discrimination." *Hukkanen v. International Union of Operating Eng'rs Local 101,* 3 F.3d 281, 285 (8th Cir.1993) (citing *Gardner v. Morris,* 752 F.2d 1271, 1279 (8th Cir.1985)). "The employee may challenge ongoing discriminatory acts even if similar illegal acts could have been challenged earlier and are thus time-barred. '[T]he critical question is whether a present violation exits.'" *Ashley v. Boyle's Famous Corned Beef Co.,* 66 F.3d 164, 168 (8th Cir.1995) (quoting *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977)).

In *Hukkanen,* the plaintiff worked as a secretary for the defendant from 1980 until her resignation in October 1984. *Hukkanen,* 3 F.3d at 284. Beginning in June 1981, she was subjected to "unwelcome lewd talk and touch and a gun-enforced threat of rape" at the hand of the defendant. *Id.* The plaintiff quit her job and filed suit claiming, inter alia, that she was constructively discharged because of her sex in violation of Title VII. *Id.* In affirming judgment for the plaintiff, the court responded to the argument that the claims were time-barred:

> This argument ignores that Hukkanen alleged and proved a pattern of sexual harassment that culminated in her constructive discharge.... The Union's last act of discrimination against Hukkanen was her constructive discharge, and within 180 days of her constructive discharge, Hukkanen filed her charge with the EEOC. We thus conclude Hukkanen's lawsuit is not time-barred.

*Id.* at 285.

■ Similarly, Plaintiffs in the present action allege a series of discrete acts of harass-ment and discrimination that culminated in their resignations. While it is true that many of the specific incidents occurred outside of the 300–day limitations period, Defendants are accused of an ongoing practice of discrimination that constituted a "continuing violation" of Title VII. Plaintiffs further allege that this pattern of behavior led to their being constructively discharged. For each Plaintiff involved, the subsequent filing of charges with the EEOC occurred within 300 days of their last day of employment.[1] Therefore, the Court denies Defendants' motion to dismiss with respect to Plaintiffs' Title VII claims.

■ Defendants make similar assertions of untimely filing as to Plaintiffs' MHRA claims. Under the MHRA, a plaintiff must bring a claim within one year after the occurrence of the discriminatory practice by either filing a charge with the MDHR or a "local commission," or by bringing a civil action directly into court. Minn.Stat. § 363.06, subd. 3. As discussed above, pursuant to the workshare agreement between the EEOC and the MDHR, charges filed with the EEOC are deemed filed with the MDHR. *See Johnson,* 940 F.Supp. at 1460. Since the Court finds that Plaintiffs made timely filings with the EEOC (within the 300–day limitations period), it necessarily follows that the filings also satisfy the one-year period provided by the MHRA. Defendants have failed to show that Plaintiffs' MHRA claims were not made a part of their EEOC filings or that the claims were not properly forwarded to the MDHR. Accordingly, the Court denies Defendants' motion to dismiss Plaintiffs' MHRA claims.

### 2. Individual Liability Under Title VII

Plaintiffs seek to hold Defendants Gus Chafoulias and Andrew Chafoulias individually liable under Title VII. Defendants argue that these claims must be dismissed because Title VII does not impose individual, employee liability. In response, Plaintiffs contend

---

1. Plaintiffs D.W., A.K., and C.H. claim that they were constructively discharged as of May 17, 1995, while T.M. makes the same claim as of May 25, 1995. All four Plaintiffs filed charges with the EEOC on March 6, 1996. The 300–day statutory filing period expired on March 12, 1996, for D.W., A.K., and C.H., and on March 20, 1996, for T.M. Consequently, the filing of charges with the EEOC was timely in each case.

that the alleged conduct of both Defendants was sufficiently reckless so as to support a finding of individual liability. In addition, Plaintiffs argue that Defendant Gus Chafoulias and the other corporate Defendants are an "integrated enterprise" which constitute a single employer for Title VII purposes.

■ Title VII forbids discrimination by any "employer." 42 U.S.C. § 2000e(b). An "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such a person...." *Id.* A growing consensus exists among the courts of appeals that employees cannot be held individually liable under Title VII. *See Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1077 (3d Cir.1996) (following precedent of the Second, Fifth, Seventh, Ninth, and District of Columbia Circuits); *E.E.O.C. v. AIC Sec. Investigations, Ltd.,* 55 F.3d 1276, 1280 (7th Cir.1995) (following precedent of the Fourth, Fifth, and Eleventh Circuits). The Eighth Circuit, however, has not yet decided the question of individual employee liability under Title VII, but it has given a strong indication of how it would rule on the issue. *See Lenhardt v. Basic Inst. of Tech., Inc.,* 55 F.3d 377, 380 (8th Cir.1995) (interpreting parallel state statute to preclude employee liability). After citing to a series of cases rejecting individual liability, the *Lenhardt* court stated that:

> The consensus of these courts is that Title VII actions brought against individual employees are against those employees in their "official" capacities, and that liability can be imposed only upon the common employer of the plaintiff and of the individual fellow employees who are named as defendants. Under this view, the language "any agent of such a person" is designed to incorporate the principles of *respondeat*

superior into Title VII rather than to expose either supervisors or co-workers to personal liability in employment discrimination cases.

. . . .

> ... Every circuit that has considered the issue ultimately has concluded that an employee, even one possessing supervisory authority, is not an employer upon whom liability can be imposed under Title VII.

*Id.* at 380–81 (emphasis in original) (citing *Miller v. Maxwell's Int'l Inc.,* 991 F.2d 583, 587 (9th Cir.1993)); *see also Karstens v. International Gamco. Inc.,* 939 F.Supp. 1430, 1438 (.D.Neb.1996) (holding no individual liability under Title VII); *Breen v. Norwest Bank Minnesota, N.A.,* 865 F.Supp. 574, 578 (D.Minn.1994) (same). This Court agrees with the reasoning of the *Sheridan* and *AIC Security Investigations* courts and, following the clear leading of the Eighth Circuit in the *Lenhardt* decision, holds that individuals, whether co-employees or supervisors, cannot be held liable under Title VII.[2]

■ In response, Plaintiffs argue that the "integrated enterprise" theory supports their claims of personal liability. "Under the judicially created single employer or integrated enterprise theory, the interrelation of two nominally separate *business entities* may lead a court to consider them as a single entity." *Rogers v. Sugar Tree Prods., Inc.,* 7 F.3d 577, 582 (7th Cir.1993) (citations omitted) (emphasis added). Here, however, Plaintiffs seek to apply the theory to an individual, not a business entity. In essence, Plaintiffs seek to use the integrated enterprise theory to pierce the corporate veil. Unfortunately, Plaintiffs fail to provide the Court with either precedent or a coherent legal argument in support of their desire to extend the reach of this doctrine. Therefore,

**2.** Plaintiffs cite to *Stockett v. Tolin,* 791 F.Supp. 1536 (S.D.Fla.1992), for the proposition that a business owner can be held personally liable under Title VII. (Pls.' Mem. Opp'n to Defs.' Mot. Dismiss at 9.) This Court, however, questions the precedential weight of the *Stockett* decision with respect to the issue at hand. First, the *Stockett* court's legal analysis of the issue is scant. *Stockett,* 791 F.Supp. at 1554 (providing the following discussion: "As an individual defendant, Tolin, as an agent for a corporate employer, is directly

liable for his actions that violate Title VII."). Second, as authority for its holding, the court cites a case that does not address direct liability, but only respondeat superior liability under Title VII. *Id.* (citing *Henson v. City of Dundee,* 682 F.2d 897, 903–05 (11th Cir.1982)). Finally, the Eleventh Circuit has subsequently rejected individual liability under Title VII. *See Smith v. Lomax,* 45 F.3d 402, 403–04 & n. 4. Consequently, this Court rejects Plaintiffs' argument.

the Court dismisses the Title VII claims against Defendants Gus Chafoulias and Andrew Chafoulias.

### 3. Claims Under 42 U.S.C. § 1985

All six Plaintiffs allege that Defendants violated 42 U.S.C. § 1985(3) by depriving them of their constitutional rights through private conspiracy and by conspiring to hinder local law enforcement in securing those rights. Defendants contend that these claims must be dismissed. In support of this contention, Defendants argue that Plaintiffs have failed to adequately plead a violation of section 1985(3) because: (1) there are no facts demonstrating that any agreements were reached; (2) there are no facts supporting the existence of a class-based, discriminatory animus; and (3) Plaintiffs have not identified any constitutional rights protected under the statute of which they have been deprived. In response, Plaintiffs argue that their section 1985(3) claims are adequately pled, based on an alleged conspiracy to deprive them of the equal protection of the laws due to their membership in the class of women.

■ In order to state a claim under the first, "deprivation" clause of section 1985(3), the plaintiff must allege and prove the following four elements:

(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Brotherhood of Carpenters & Joiners v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3355–56, 77 L.Ed.2d 1049 (1983); *see Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971). As for the "purpose" element of the conspiracy, the Supreme Court requires the plaintiff to prove "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin,* 403 U.S. at 102, 91 S.Ct. at 1798. While

it is clear that the section covers conspiracies motivated by racial animus, the Supreme Court has "not yet had occasion to resolve the 'perhaps'." *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 269, 113 S.Ct. 753, 759, 122 L.Ed.2d 34 (1993). In a number of instances, however, the Supreme Court has identified types of classes that do not fit within the purview of the section. *See, e.g., id.* (holding "women seeking abortion" not a qualifying class); *Scott,* 463 U.S. at 838–39, 103 S.Ct. at 3361–62 (holding "conspiracies motivated by economic or commercial animus" not within purview of section 1985(3)). As a cautionary note, the Court has stated that the section was not "intended to apply to all tortious, conspiratorial interference with the rights of others" or to be a "general federal tort law." *Griffin,* 403 U.S. at 101–02, 91 S.Ct. at 1797–98.

■ The parties dispute whether the class of "women in general" is a qualifying class under section 1985(3). Although some courts have so found, this Court need not decide that issue in resolving the motion before it. *See Libertad v. Welch,* 53 F.3d 428, 449 (1st Cir.1995) (holding that woman are a protected class within the meaning of section 1985(3) and citing case law examples from the Second, Third, Fourth, and Seventh Circuits). Instead, the Court focuses on a less contentious infirmity that plagues the pleadings. Plaintiffs' claims fail because their cause of action is not, and cannot be, based upon a deprivation of a recognized constitutional right covered by the section. In *Bray,* the Supreme Court noted that section 1985(3): "does not apply ... to private conspiracies that are 'aimed at a right that is by definition a right only against state interference,' but applies only to such conspiracies as are 'aimed at interfering with rights ... protected against private, as well as official, encroachment.'" 506 U.S. at 278, 113 S.Ct. at 764 (quoting *Carpenters,* 463 U.S. at 833, 103 S.Ct. at 3358). "There are few such rights." *Id.* Specifically, the only "private" rights recognized by the Supreme Court to fall within the ambit of section 1985(3) are two Thirteenth Amendment rights—the right to be free from involuntary servitude and the right of interstate travel. *See id.* (citations

omitted); *see also Welch v. Board of Dirs. of Wildwood Golf Club,* 877 F.Supp. 955, 959 (W.D.Pa.1995) (following *Bray* in dismissing section 1985(3) claims for failure to show conscious impairment of right of interstate travel). Giving the most generous reading to the alleged facts and making every reasonable inference in favor of Plaintiffs' claims, the Court cannot conceive of a set of facts flowing from these cases that could implicate either of these two constitutional rights. Accordingly, the Court finds that Plaintiffs have failed to state a claim under the first, "deprivation" clause of section 1985(3).

 The second, "prevention" clause of section 1985(3) covers conspiracies "for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws...." § 1985(3). Under the "prevention" clause, the conspiracy must be of a type that either involves or affects the State. *See Carpenters,* 463 U.S. at 830, 833, 103 S.Ct. at 3358–59; *Libertad,* 53 F.3d at 449–50. In other words, the conspiracy must involve hindering or impeding "law enforcement officials from securing equal protection of the laws to a class of citizens...." *Libertad,* 53 F.3d at 450. In the action at bar, the "prevention" or "hindrance" alleged is based on the assertions that Defendant Gus Chafoulias "instructed local authorities not to prosecute" the offending foreign guests for sex crimes against women and, according to the Plaintiffs D.W. and A.K., Defendants "interfered with the criminal prosecutions." (D.W. Compl. ¶¶ 105–06; A.K. Compl. ¶¶ 99–100; S.M. Compl. ¶ 115; T.M. Compl. ¶ 108; A.R. Compl. ¶ 116; C.H. Compl. ¶ 119.) These meager allegations are simply insufficient to give fair notice to Defendants of the nature of Plaintiffs' claims. Specifically, Plaintiffs have failed to allege with sufficient particularity that "the [Defendants] reached some agreement to deprive [Plaintiffs] of a federal right." *Gometz v. Culwell,* 850 F.2d 461, 464 (8th Cir.1988); *see City of Omaha Employees Betterment Ass'n v. Omaha,* 883 F.2d 650, 652 (8th Cir.1989). Therefore, the Court dismisses the section 1985(3) conspiracy counts from all six Complaints.

**4. Tort Claims and the Minnesota Workers' Compensation Act**

 Defendants next argue that Plaintiffs' negligence claims must be dismissed because of the exclusivity provisions of the Minnesota Workers' Compensation Act (the "WCA"). The WCA is intended to be an employee's exclusive remedy against an employer for most job-related injuries. *See* Minn.Stat. § 176.031; *Fernandez v. Ramsey County,* 495 N.W.2d 859, 860 (Minn.Ct.App. 1993). Specifically, employers are required to "pay compensation in every case of personal injury or death of an employee arising out of and in the course of employment without regard to the question of negligence ...." § 176.021, subd. 1. "Personal injury" is defined as

> injury arising out of and in the course of employment ... but does not cover an employee except while engaged in, on, or about the premises where the employee's services require the employee's presence as a part of such service at the time of the injury and during the hours of such service....

§ 176.011, subd. 16. One exclusion to the WCA, commonly called the "assault exception," is found in the following statutory language: "Personal injury does not include an injury caused by the act of a third person or fellow employee intended to injure the employee because of personal reasons, and not directed against the employee as an employee, or because of the employment." *Id.* In short, an injury is exclusively compensable under the WCA when it: (1) arises out of the employment, (2) is in the course of the employment, and (3) does not come within the assault exception. *See Foley v. Honeywell, Inc.,* 488 N.W.2d 268, 271 (Minn.1992). While the parties dispute whether the injuries complained of arose "out of and in the course of employment," the main battleground is over the applicability of the assault exception.

Defendants argue that the Complaints "indisputably allege that the claimed harassment comprised random and impersonal acts resulting from the circumstances of employment." (Defs' Mem.Supp.Mot. Dismiss at

18.) The Court does not agree. "The acts excluded by the assault exception (1) must be intended to injure the victim because of personal reasons, and (2) must not be directed against the employee as an employee." *Fernandez*, 495 N.W.2d at 861. The determination of whether an act was animated by "personal reasons" is a question of fact. *See id.* ("[I]t is the motivation of the assailant that determines whether the act is personal."). At this early stage of the proceedings, the Court can reasonably infer that some of the alleged attacks were of a personal nature wholly unrelated to the parties' employment. In particular, the pleadings relate accounts of multiple incidents of sexual harassment occurring between the same parties over the course of several months or years. *Cf. Foley*, 488 N.W.2d at 273 (holding random sexual attack and murder not within assault exception and wrongful death action compensable under WCA); *Bear v. Honeywell, Inc.*, 468 N.W.2d 546 (Minn.1991) (holding alleged rape by unknown assailant not within assault exception and injuries compensable under the WCA). Furthermore, not all alleged incidents occurred on Defendants' business premises. While it may be "more likely than not" that many of the alleged injuries fall within the WCA's exclusive purview, that is not the standard of review for this motion to dismiss. Instead, the Court denies the motion to dismiss Plaintiffs' negligence claims because a reasonable inference can be drawn that the injuries fall outside the scope of the WCA.

### 5. Claims For Negligent Retention

All six Plaintiffs make claims for negligent retention. Defendants argue that these claims must be dismissed because: (1) the pleadings are devoid of facts supporting a cause of action for negligent retention; (2) none of the plaintiffs allege that Defendants' managers or employees committed any tortious acts, with the exception of Plaintiff T.M.; and (3) the managers indisputably were acting within the scope of their employment at all times. Plaintiffs argue that the pleadings clearly state a factual basis for negligent retention, namely: After repeated complaints by Plaintiffs, Defendants' managers had actual or constructive knowledge of the harassment by both the hotel's foreign guests and employees, yet Defendants did nothing.

Minnesota has long recognized the common-law tort theory of negligent retention. *See Ponticas v. K.M.S. Invs.*, 331 N.W.2d 907, 910 (Minn.1983) ("We have recognized that a person injured by a negligently retained employee may recover damages from the employer.") (citations omitted); *Yunker v. Honeywell, Inc.*, 496 N.W.2d 419, 423 (Minn.Ct.App.1993) (noting that as early as 1889 the Minnesota Supreme Court had sanctioned negligent retention as a theory of recovery) (citing *Dean v. St. Paul Union Depot Co.*, 41 Minn. 360, 43 N.W. 54, 55 (1889)). Under the theory, an employer may be held directly liable for "an employee's intentional tort, an action almost invariably outside the scope of employment, when the employer knew or should have known that the employee was violent or aggressive and might engage in injurious conduct." *Yunker*, 496 N.W.2d at 422. Minnesota courts have recognized that employment-based sexual harassment may form the basis for a claim of negligent retention. *See Mandy v. Minnesota Mining & Mfg.*, 940 F.Supp. 1463, 1470–72 (D.Minn.1996); *Thompson v. Campbell*, 845 F.Supp. 665, 676 (D.Minn.1994); *Bruchas*, 553 N.W.2d at 442–43; *Kresko v. Rulli*, 432 N.W.2d 764, 769–70 (Minn.Ct.App.1988). General harassment, however, is not enough. *See Bruchas*, 553 N.W.2d at 442. Instead, the employee's conduct must rise to the level of an intentional tort in order to be actionable under the theory. *See id.* (citation omitted).

Here, Plaintiffs have alleged that on many occasions they complained to Defendants' managers about the sexual harassment committed by the hotel's foreign guests and that nothing was done in response to their complaints. In other words, Plaintiffs charge that the managers' inaction constitutes unfitness in light of the affirmative acts of sexual harassment perpetrated by the foreign guests. Plaintiffs further allege that Defendants' own employees committed tortious acts. Defendants allegedly knew of the unfitness of their employees and yet took no

action. From these allegations, the Court concludes that Plaintiffs have adequately pleaded a claim for negligent retention.

It is highly improbable that Plaintiffs will be able to successfully sustain an action under this theory since it does not appear from the allegations that Defendants' employees actually committed any intentional torts. A claim for negligent retention cannot survive on the intentional torts of non-employee third-parties. The Court, however, cannot conclusively determine from the pleadings alone that there are no facts or set of facts which would allow recovery. Consequently, the Court denies Defendants' motion to dismiss with respect to the claims for negligent retention.[3]

Defendants argue that Plaintiffs' negligent retention claims must be dismissed because the alleged conduct occurred exclusively within the scope of employment. The Court does not agree. There is currently some disagreement amongst the courts of Minnesota over whether the theory of negligent retention is subject to a "scope of employment" limitation. Compare Leidig v. Honeywell, Inc., 850 F.Supp. 796, 807 (D.Minn. 1994) (holding that "[a]n action for negligent retention imposes liability for acts that fall outside the scope of the employment relationship."), and Cook v. Greyhound Lines, Inc., 847 F.Supp. 725, 733 (D.Minn.1994) (stating that "we have failed to uncover any decision in which the doctrine of negligent hiring or retention has been applied to conduct which arises within the course and scope of an employment relationship.") (emphasis in original), with Bruchas v. Preventive Care, Inc., 553 N.W.2d 440, 442 (Minn.Ct.App.1996) (stating that "[n]egligent retention does not involve a scope of employment limitation . . . .") (citing Yunker, 496 N.W.2d at 422); and M.L. v. Magnuson, 531 N.W.2d 849, 857 n. 4 (Minn.Ct.App.1995) (disagreeing with the "apparent holding" in Cook, as well as Leidig, which presumably require that the "employee's actions must occur outside the scope of employment."). A review of Minnesota

case law reveals that the theory of negligent retention is primarily focused on "address[ing] risks created by exposing members of the public to a potentially dangerous individual," not on the relationship of the conduct to the scope of employment. Yunker, 496 N.W.2d at 422. While the doctrine has been consistently applied to conduct arising outside the scope of employment, it is a non sequitur to conclude that therefore it cannot apply to conduct arising within.

### 6. Claims For Common–Law Conspiracy

Defendants next argue that Plaintiffs' common-law conspiracy claims must be dismissed for failure to adequately plead a cause of action. "Common-law conspiracy involves a combination of persons to accomplish either an unlawful purpose or a lawful purpose by unlawful means." Anderson v. Douglas County, 4 F.3d 574, 578 (8th Cir.1993). It is "proper to 'sustain complaints against private persons who conspire with immune public officials if the allegations of conspiracy are sufficiently specific.' " White v. Walsh, 649 F.2d 560, 561 (8th Cir. 1981) (quoting White v. Bloom, 621 F.2d 276, 281 (8th Cir.1980)). In the action at bar, it is unclear from the pleadings: (1) whether there were multiple conspiracies or one large conspiracy; (2) who was involved in the conspiracies or conspiracy; and (3) what was the unlawful purpose or unlawful means involved. Furthermore, the pleadings contain only bald-faced allegations that an agreement existed. In particular, the alleged "meeting of the minds" is based on the assertions that Defendant Gus Chafoulias "instructed local authorities not to prosecute" the offending foreign guests for sex crimes against women and that Defendants "intentionally interfere[d] with the prosecution of these crimes." (D.W. Compl. ¶¶ 132–33; A.K. Compl. ¶¶ 126–27; S.M. Compl. ¶¶ 91–92; T.M. Compl. ¶¶ 134–35; A.R. Compl. ¶¶ 142–43; C.H. Compl. ¶¶ 145–46.) These meager allegations are simply insufficient to give fair

---

3. In their Notice of Motion and Motion to Dismiss Based Upon Rule 12(b)(6), Defendants state that they move the Court to dismiss Plaintiffs' claims for Negligent Supervision. (See Notice Mot. and Mot. Dismiss ¶ 2, Clerk Doc. No. 20.)

In their papers, however, Defendants fail to adequately discuss the basis for their motion with respect to those claims. Therefore, the Court denies Defendants' motion as to Plaintiffs' claims for Negligent Supervision.

notice to Defendants of the nature of Plaintiffs' claims. Specifically, Plaintiffs have failed to sufficiently allege that Defendants reached an agreement. Therefore, the Court dismisses the common-law conspiracy counts from all six Complaints.

### 7. Claims For Assault, False Imprisonment, and Aiding and Abetting

Defendants also challenge the pleadings with respect to Plaintiffs' claims for assault, false imprisonment, and aiding and abetting. In particular, Defendants argue that Plaintiffs cannot use the doctrine of respondeat superior or the theory of "joint concerted tortious conduct" to hold Defendants liable for the intentional torts of its guests. Defendants further contend that "aiding and abetting" is a crime in Minnesota, not a civil cause of action. In response, Plaintiffs argue that by their inaction in the wake of multiple complaints, Defendants are liable for the intentional torts committed by the foreign guests. In addition, Plaintiffs maintain that failure to take action can result in liability for aiding and abetting under the MHRA.

■■■■ Liability for assault and false imprisonment, which was perpetrated by the hotel's foreign guests, cannot be imputed to Defendants via the doctrine of respondeat superior. Pursuant to the doctrine,

> the act of an agent within the scope of his agency is the act of his principal.... [T]he principal is liable because the law attributes to him the act of his agent, with the result that both are liable jointly and severally to the person injured by the wrongful act.

*Melady v. South St. Paul Live Stock Exch.,* 142 Minn. 194, 171 N.W. 806, 807 (1919). In the action at bar, Plaintiffs have not alleged, nor can the Court reasonably infer from the pleadings, that any agency relationship existed between the foreign guests and Defendants. Specifically, Plaintiffs readily admit that the intentional torts were actually committed by the foreign guests. (*See* Pls.' Mem.Opp'n to Defs.' Mot. Dismiss at 29–31.) Moreover, the only relationship that Defendants allegedly had to the tortious acts was that of possessing knowledge about the foreign guests' prior conduct and the likelihood of its recurrence. (*See, e.g.,* D.W. Compl. ¶¶ 157–60, 175–80.) Consequently, the Court finds no basis for holding Defendants liable under the doctrine of respondeat superior.

■■■■ Likewise, the Court finds no basis for imposing liability on Defendants under the theory of "joint concerted tortious conduct." In Minnesota, the theory is derived from the Restatement (Second) of Torts section 876, which states in relevant part:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself....

In the context of civil liability, the Minnesota Supreme Court has noted that under this theory " '[t]he mere presence of the particular defendant at the commission of the wrong, or his failure to object to it, is not enough to charge him with responsibility.' " *Olson v. Ische,* 343 N.W.2d 284, 289 (Minn. 1984) (quoting *Stock v. Fife,* 13 Mass.App.Ct. 75, 430 N.E.2d 845, 849 n. 10 (1982); *see also Lind v. Slowinski,* 450 N.W.2d 353, 357 (Minn.Ct.App.1990) ("For this theory to be applicable, the participants must therefore know of the plan and its purpose and take affirmative steps to encourage the achievement of the tortious result.")). For the reasons stated above, Plaintiffs claims fail. Namely, Defendants' only connection to the tortious acts of the foreign guests was their alleged knowledge of past conduct and the probability that it would happen again. Knowledge alone, however, is inadequate to sustain a cause of action under the theory of joint concerted tortious conduct. Moreover, failure to object to it is also insufficient. Therefore, the Court dismisses Plaintiffs' claims for assault and false imprisonment.

■■■■ Furthermore, Plaintiffs fails to state claims for "aiding and abetting." In Minnesota, there is no common law cause of action for "aiding and abetting." Plaintiffs assert that a supervisor may be held liable for

aiding and abetting conduct which violates the MHRA. (*See* Pls.' Mem. Opp'n to Defs.' Mot. Dismiss at 31–33.) To be certain, Minnesota Statutes section 363.03, subdivision 6, creates statutory liability for aiding or attempting to aid a person engaging in conduct forbidden by the MHRA. Under these circumstances, however, assertion of such a claim is illogical and legally impossible. First, Plaintiffs do not name supervisors as parties to this action. Thus, the existence of the claims for aiding and abetting cannot be maintained on the basis of the individual liability of managers or supervisors. Second, Plaintiffs have asserted direct claims against Defendants for violations of the MHRA. Plaintiffs are now claiming that Defendants also aided and abetted violations of the MHRA. In essence, Plaintiffs are asserting that Defendants aided and abetted themselves in committing illegal acts. This is nonsensical. Accordingly, the Court dismisses Plaintiffs claims for aiding and abetting.

### 8. Claims For Defamation

All six Complainants allege causes of action in defamation. In order to properly plead a claim for defamation, a plaintiff must allege that "the defendant published a false statement of fact that concerns the plaintiff and tends to harm the plaintiff's reputation or to lower her in the estimation of the community." *Schibursky v. IBM*, 820 F.Supp. 1169, 1181 (D.Minn.1993) (citations omitted). In addition, "a claim for defamation must be pled with a certain degree of specificity." *Id.* (citing *Pinto v. Internationale Set, Inc.*, 650 F.Supp. 306, 309 (D.Minn. 1986); *Stock v. Heiner*, 696 F.Supp. 1253, 1260 (D.Minn.1988)). While it is not necessary for the complaint to recite the exact language spoken, it is necessary that the plaintiff identify who made the defamatory statement and what was said. *See id.* Here, however, Plaintiffs merely aver that "*Defendants* falsely alleged that Plaintiff invited and deserved the illegal conduct of the male, Arab perpetrators described herein, communicating that she was 'unchaste.'" (*See. e.g.,* D.W. Compl. ¶ 186) (emphasis added). In their present form, the Complaints fail to adequately identify the individual defendants who made the allegedly defamatory remarks.

Therefore, the Court dismisses Plaintiffs' claims for defamation.

### 9. Claims Under the Minnesota Whistleblower Act

Plaintiffs D.W., A.K., T.M., A.R., and C.H. assert that Defendants violated the "Whistleblower Act" because Defendants allegedly retaliated against Plaintiffs because of Plaintiffs' reports of sexual harassment. In addition, Plaintiffs A.R. and C.H. make the same claims with respect to their reporting of health-code violations. The Act states in relevant part:

> An employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because ... the employee, or a person acting on behalf of an employee, in good faith, reports a violation or suspected violation of any federal or state law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official....

Minn.Stat. § 181.932, subd. 1(a).

At the outset, to the extent Plaintiffs rest their Whistleblower Act claims on alleged reports of sexual harassment, the claims fail. The Minnesota Supreme Court has clearly held that where a plaintiff asserts retaliation claims under both the MHRA and the Whistleblower Act, the exclusivity provision of the MHRA, i.e., Minnesota Statutes section 363.11, bars the Whistleblower–Act claim to the extent the allegedly violative conduct is covered by the MHRA's retaliation provision. *See Williams v. St. Paul Ramsey Med. Ctr.*, 551 N.W.2d 483, 485–86 (Minn.1996). Thus, Plaintiffs' Whistleblower claims that are related to the reports of sexual harassment must be dismissed.

Furthermore, Plaintiffs A.R. and C.H.'s Whistleblower claims that are related to their alleged reporting of health-code violations must be dismissed as well. As noted above, the Whistleblower Act prohibits retaliation against an employee when that employee "reports a violation or suspected violation ... to *any governmental body* or *law en-*

*forcement official.*" Minn.Stat. § 181.932, subd. 1(a) (emphasis added).[4] In contrast, Plaintiff A.R. alleges that she

> pointed out unsanitary practices and health hazards at the hotel. Plaintiff expressed concern about leftover food previously served to guests ... being re-served to other guests. Plaintiff also expressed concern about other internal problems at the Radisson. Defendants rudely told Plaintiff that her "input" was not needed.

(A.R.Compl.¶ 68.) Likewise, Plaintiff C.H. alleges that she "had complained about the hotel's habit of re-serving food which had been previously served to other, possibly ill, guests." (C.H.Compl.¶ 69.) These two Complaints lack any factual basis for the Court to infer that reports were made to any governmental body or official, as required by statute. Consequently, the Court dismisses Plaintiffs' claims for violations of the Minnesota Whistleblower Act.

### 10. Proper Party

■ Finally, Defendants' assert that the "Radisson Plaza Hotel Rochester" should be dismissed as a named party to this action since it is not a legal entity that can sue or be sued. A court should dismiss a party that is not a legal entity. *See Ramsey v. Signal Delivery Serv., Inc.,* 631 F.2d 1210, 1212 (5th Cir.1980). In their pleadings, Plaintiffs allege that "Defendant Radisson Plaza Hotel Rochester ('Radisson') is an assumed name for BDG5 Limited Partnership and is doing business at 150 S. Broadway in Rochester, Minnesota 55904." (*See, e.g.,* D.W. Compl. ¶ 16.) Moreover, Plaintiffs join BDG5 Limited Partnership ("BDG5") as a party-defendant to this action. (*See id.* ¶ 17.) In their Answer, Defendants admit that Radisson is an assumed name for BDG5 and assert that Radisson "is not a proper party and pursuant to Rule 9 of the Federal Rules of Civil Procedure it does not have capacity or legal existence." (Answer ¶ 16.) The Court finds that

these pleadings create no issue as to Radisson's incapacity to sue or be sued. Plaintiffs affirmatively plead that Radisson is merely an "assumed name" for another business entity, BDG5, which is a party to this action. Therefore, the Court grants Defendants' motion to dismiss the "Radisson Plaza Hotel Rochester" as a party-Defendant.

## CONCLUSION

Plaintiffs' Complaints are fundamentally flawed in numerous ways. At this point, the Court need not rehash its holdings and discussions with respect to the issues raised in Defendants' Motion to Dismiss. Instead, the Court focuses its concluding comments on the common thread of reasoning running throughout its decision to dismiss so many counts and claims.

While the entrance into federal court has become more inviting with the institution of "notice pleading," basic pleading requirements remain. In the matter before this Court, even with the liberalized rules provided by the Federal Rules of Civil Procedure, the dismissed claims fall well short of the low threshold that must be met. The Court cautions these and other parties against construing the liberality of the federal rules as a license for filing ill-conceived and poorly constructed pleadings.

Accordingly, **IT IS HEREBY ORDERED THAT:**

1. Defendants' Motion to Dismiss (Clerk Doc. Nos. 6, 18 & 20) is GRANTED in part and DENIED in part;

2. All counts and claims against Defendants Gus Chafoulias and Andrew Chafoulias alleging violations of Title VII are DISMISSED WITH PREJUDICE;

3. All counts and claims alleging Conspiracy to Interfere with Civil Rights, 42 U.S.C. § 1985, are DISMISSED;

---

4. The statute provides two other instances in which an employer may be held liable for retaliatory conduct. In particular, an employer cannot retaliate against an employee who

> is requested by a public body or office to participate in an investigation, hearing, inquiry; or .... refuses an employer's order to perform an action that the employee has an objective basis to believe violates any state or federal law ... and the employee informs the employer that the order is being refused for that reason.

Minn.Stat. § 181.932, subd. 1(b) & (c). Neither clause applies to this action.

4. All counts and claims alleging Conspiracy are DISMISSED;

5. All counts and claims alleging Assault are DISMISSED;

6. All counts and claims alleging False Imprisonment are DISMISSED;

7. All counts and claims alleging Liability of an Aider and Abettor are DISMISSED;

8. All counts and claims alleging Defamation are DISMISSED;

9. All counts and claims alleging Violation of the Minnesota Whistleblower Act are DISMISSED; and

10. Radisson Plaza Hotel Rochester is DISMISSED as a party-defendant to this action.